**In re Ronald Philip SLEPIAN, Debtor.**

**Bankruptcy No. 94–105128–MAM.**

United States Bankruptcy Court,
S.D. Alabama.

Aug. 19, 1994.

Lawrence B. Voit, Mobile, AL, for debtor.

Theodore L. Hall, Mobile, AL, for trustee.

### ORDER DENYING IN PART AND GRANTING IN PART TRUSTEE'S OBJECTION TO EXEMPTIONS

MARGARET A. MAHONEY, Bankruptcy Judge.

This matter comes before the Court by way of an objection filed by the Trustee as to two claims of the Debtor—(1) to the proceeds of a non-fully vested ERISA-qualified retirement plan with Bay Title Company ("Bay Title Plan"); and (2) an Individual Retirement Account ("IRA"). For the reasons indicated below, the objections by the Trustee are denied as to the retirement plan and sustained as to the IRA.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and the Order of Reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Proper notice of the motion was given and appearances at the oral argument on the motion were as noted in the record.

■ The Debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on March 16, 1994. At that time, the Debtor claimed the entire balance of his IRA ($22,900) as exempt under Ala. Code (1975) § 19–3–1(b) ("Code § 19–3–1") or, alternatively, as outside of his bankruptcy estate pursuant to § 541(c)(2) of the Bankruptcy Code ("Section 541 or § 541"). Also, the Debtor claimed a full exemption for his interest ($1,610) in the Bay Title Plan under Code § 19–3–1 or claimed the amount was not property of his bankruptcy estate under § 541(c)(2).[1] The trustee has objected to these characterizations.

The parties previously stipulated that the Bay Title Plan is an ERISA-qualified plan. Section 541(c)(2) provides that the interest of a debtor in property does not become property of the estate if the property is a type which contains a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law ..." Section 541(c)(2) is a very limited exception that has always been construed to exclude traditional spendthrift trusts which are enforced under state law. Generally, spendthrift trusts are described this way:

> A spendthrift trust is one in which the right of the beneficiary to future payments of income or capital cannot be voluntarily transferred by the beneficiary or reached by his or her creditors.

*In re Graham*, 726 F.2d 1268, 1271 (8th Cir.1984). In other words, if state law allows a person to put the corpus of a trust beyond the reach of any of the beneficiary's creditors, Section 541(c)(2) enforces this inalienability in bankruptcy by placing the assets outside the bankruptcy estate being administered. In this case, the Debtor's Bay Title Plan contains an anti-alienation clause which attempts to put the trust assets beyond the reach of creditors.

■ Until recently there was a controversy as to whether § 541(c)(2) excluded from a debtor's estate a debtor's interest in a pension plan that contained an anti-alienation clause and was "ERISA-qualified" because some case law held that the Employee Retirement Income Security Act ("ERISA") was not "applicable nonbankruptcy law." In *Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court determined that the reference to "applicable nonbankruptcy law" in § 541(c)(2) is not merely limited to state spendthrift trust law but also includes federal laws such as ERISA. Thus, for the purposes of § 541(c)(2), an anti-alienation clause in an ERISA-qualified pension plan constitutes a restriction on transfer which allows a trust to be excluded from the Debtor's bankruptcy estate. *Id.* —— U.S. at ——, 112 S.Ct. at 2248. Therefore, under the rule announced in *Patterson*, the Debtor's interest in the Bay Title Plan is excluded from Mr. Slepian's bankruptcy estate pursuant to § 541(c)(2).

■ Next, the Debtor argues that his IRA account is also not property of the estate pursuant to § 541(c)(2). First, the court must determine what state's law is used to determine whether the trust is a "spendthrift trust." Alabama allows parties to agree what law should control. *Goodwin v. George Fischer Foundry Systems, Inc.*, 769 F.2d 708, 712 (11th Cir.1985) ("Alabama recognizes the right of contracting parties to choose the law of another state that governs the contract so long as the consequences of such provisions are not likely to be contrary to Alabama law or public policy"); *Stilson v. Gulf States Paper Corp. (In re Pilkington)*, 89 B.R. 911, 914, 918 (D.C.N.D.Ala.1987). Section 12.4 of Article XII of the Custodial Account Agreement signed by the Debtor in regard to this IRA states:

> This Agreement shall be construed, administered and enforced in accordance with the laws of the State of New York, to the extent not preempted by federal law.

Therefore, in accordance with the contract the Debtor agreed to regarding his IRA, New York state law shall apply.

---

1. Alabama is an "opt-out" state pursuant to Ala. Code (1975) § 6–10–11 and debtors cannot elect to utilize the federal bankruptcy exemptions.

In *In re Kramer*, 128 B.R. 707 (Bankr. E.D.N.Y.1991) a New York Bankruptcy Court had to determine whether an IRA fit within the enunciated state law definition of a spendthrift trust. The *Kramer* court concluded that "there is no conclusive presumption that IRAs are spendthrift trusts." *Id.* at 709. In fact, the *Kramer* court found that because of the ability of the debtor to exercise complete control over the fund, regardless of monetary penalty, an IRA does not fall within the scope of § 541(c)(2) or the New York Estate, Power and Trust Law. Section 7–3.1. *Id.* (New York state statute 7–3.1 fails to specifically include IRAs in the list of accepted spendthrift trusts.)

In the immediate case, the Debtor enjoys control over the assets of his IRA. In the Summary of Rules pertaining to the IRA, there is a section titled Distributions From Your IRA. It states:

> Assets in an IRA become available when you reach age 59½, become disabled or die. If you withdraw funds prior to that time, the amount withdrawn (other than non-deductible contributions) is subject to ordinary income tax plus a 10% penalty tax unless you meet the following exception to the 10% penalty rule: You can withdraw money from your IRA before age 59½ if you take annual (or more frequent) payments over your life expectancy of you and your beneficiary. *This flexibility is extremely valuable if you take early retirement and need income from your IRA before you reach age 59½* (emphasis added).

Further, item number 17 of the Disclosure statement signed by the Debtor upon consummation of the IRA states:

> **Prohibition Against Assignment**
> If you pledge amounts of your IRA as security for a loan, then the amounts pledged are considered to be distributed to you and this amount must be included in your gross income. Further, you may be subject to an additional tax equal to 10% of the amount pledged if you pledge your IRA before you attain age 59.

Clearly, these two provisions indicate that the Debtor has control over the corpus of his IRA, albeit subject to early withdrawal penalties. Therefore, based on applicable New York State law, the Debtor's IRA is not a trust defined in § 541(c)(2).

■ Although the Court believes New York law controls in this case, if Alabama law is for any reason found to apply, the result is the same. The only way Mr. Slepian's IRA is outside the ambit of property of the estate is if (1) the IRA is a spendthrift trust under Code § 19–3–1(b) or (2) the IRA is a spendthrift trust under other principles of Alabama trust law. Taking the second issue first, under Alabama law, the degree of control over an account exercisable by the Debtor is an important consideration. There is a limited amount of case law on point in Alabama. *In First City National Bank v. Long–Lewis Hardware*, 363 So.2d 770 (Ala. 1978), the Court discussed the essential elements of a trust.

> It has been held that a special deposit creates a trust situation. "When a special deposit is made for some specific purpose, other than to be safely kept and returned to the depositor, though it partakes of the nature of a bailment, it is of a peculiar class and creates a trust." *Collins v. Morgan County National Bank*, 226 Ala. 376, 147 So. 161, 162 (1933) ... Where there is an irrevocable appropriation of the special deposit funds to the debtor's obligation, *and the debtor has parted with all control of the funds a trust is created*, held by a bank as trustee and not as a fiscal agent (emphasis added). *Creel v. Birmingham Trust National Bank*, 383 F.Supp. 871, 877 (N.D.Ala.1974), *aff'd*, 510 F.2d 1363 (5th Cir.1975) (emphasis added).

The *Pilkington* case, *supra* at 914, in reviewing Alabama spendthrift law, stated:

> Since early days of statehood, Alabama has followed the English common law by severely limiting the efficacy of spendthrift clauses. The few cases in which creditors were unsuccessful in reaching property interests owned by a debtor were based not on restriction clauses against alienability, attachment or execution but rather on the contingent or joint nature of the debtor's interest in the property.

Alabama, over time, has lessened in its disfavor of spendthrift trusts. First in 1935, Code § 19–3–1 was enacted. It makes clear that testamentary or intervivos trusts can contain anti-alienation and assignment clauses that will be enforced. *Pilkington, supra* at 914.

Section 19–3–1(b) of the Alabama Code is the "state spendthrift trust law" as stated in the language of the statute itself. Code § 19–3–1(b)(4). It provides that a "qualified trust" as defined in the statute is a spendthrift trust. A "qualified trust" is a trust which meets the requirements for federal tax purposes of 26 U.S.C. § 401(a). An IRA, pursuant to § 19–3–1(b)(5)(d)(3), is a "qualified trust" since it is tax qualified. Section 19–3–1(b) then states that qualified trusts may not be reached by creditors, in a bankruptcy or nonbankruptcy context.[2] This would seemingly cover IRAs. However, § 19–3–1(b)(4) states:

> (4) **Interpretation.** The provisions of this section shall be interpreted so as to provide restrictions on alienation and assignment to the extent, *and only to the extent,* the same are required for a trust within the definition of "qualified trust" herein to be a "qualified trust" under the applicable provisions of the [Internal Revenue] Code, notwithstanding any attempted assignment or alienation in violation of section 401(A) or other applicable provisions of the [Internal Revenue] Code. It is intended that this section will constitute "a restriction of the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law" for purposes of section 541(c)(2) of the federal Bankruptcy Code, 11 U.S.C. § 541(c)(2), as from time to time amended. This section shall further be construed as a "state spendthrift trust law." It is further intended for this section to provide an exemption from creditors' claims within 11 U.S.C. § 522 (emphasis added).

Any qualified trust covered by Code § 19–3–1(b) has an anti-alienation provision engrafted on to it by Code § 19–3–1(b)(1) but *only to the extent* such is required to maintain its tax-deferred status. The Internal Revenue Code has no such requirement of IRAs. 29 U.S.C. § 1051(6). Therefore, no anti-alienation provision is engrafted on to Mr. Slepian's IRA. As stated earlier, the contract itself contains no such language either. Many lower courts, and most recently the Supreme Court in *Patterson v. Shumate, supra,* have found that IRAs are not required to have anti-alienation and assignment provisions in order to qualify for tax deferred status. In fact, in *Patterson,* the Court concluded:

> Pensions plans that qualify for preferential tax treatment under 26 U.S.C. § 408 (individual retirement accounts) are specifically excepted from ERISA's anti-alienation requirement. See 29 U.S.C. § 1051(6). Although the debtor's interest in these plans could not be excluded under § 541(c)(2) because the plans lack transfer restrictions enforceable under "applicable nonbankruptcy law," that interest nevertheless could be exempted under § 522(d)(10)(E).

*Patterson v. Shumate,* —— U.S. at ——, 112 S.Ct. at 2249. Given that an IRA is not required to have restrictions on alienation and assignment in order for it to obtain tax deferred status, and this IRA has no such contractual provisions, it does not qualify as exempt under Code § 19–3–1(b)(1) or constitute a trust which has a "restriction on the transfer of a beneficial interest of the debtor" under § 541(c)(2).

Therefore, the Debtor's retirement plan with Bay Title Company is determined not to be part of the bankruptcy estate pursuant to § 541. However, the Debtor's IRA is determined to be included in the estate and is not exempt property pursuant to 11 U.S.C. § 522 or Code § 19–3–1.

---

**2.** Any benefits provided under a plan which includes a trust that constitutes a "qualified trust" may not be assigned or alienated, voluntarily or involuntarily, and shall be exempt from the operation of any bankruptcy or insolvency laws under 11 U.S.C. § 522(b), as from time to time amended.