**In re Robert J. HIPPLE, Debtor.**

**Bankruptcy No. A94–68866–SWC.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Aug. 30, 1996.

Bradley M. Hoyt, Eells, Hoyt & Dennison, LLC, Atlanta, GA, Trustee.

John A. Medina, Eells, Hoyt & Dennison, LLC, Atlanta, GA, for Trustee.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court are the timely objections of the Chapter 7 Trustee ("Trustee") and

creditor, P. Don Williams, (collectively "Objectors") to Robert J. Hipple's exemption claims to three retirement or pension accounts. Objectors seek a determination that these accounts are property of the estate. Debtor contends that the accounts are excluded from the estate under 11 U.S.C. § 541(c)(2) or are exempt pursuant to O.C.G.A. § 44–13–100. The parties have submitted this matter upon a Joint Stipulation of Facts, as amended, and exhibits. This is a core proceeding pursuant to 28 U.S.C. § 1334(b) and (e) and § 157(b)(2)(B) & (E). For the reasons stated below, the objections by the Trustee are overruled in part and granted in part.

### FACTS

The parties' Joint Stipulation of Facts, as amended, is adopted and incorporated by reference. Debtor is the beneficiary of a Teachers Insurance and Annuity Association account and a College Retirement Equities Fund account ("TIAA/CREF accounts") established by his former employer, Emory University. He is also the beneficiary of a Simplified Employee Pension/Individual Retirement Account ("SEP/IRA") which he established through his professional corporation.

On or about September 1, 1984, Robert J. Hipple, P.C. ("Hipple, P.C."), Debtor's wholly owned law firm, established the Robert J. Hipple, P.C. Employee Pension Plan and Trust Agreement and the Robert J. Hipple, P.C. Employee Profit Sharing Plan and Trust Agreement (collectively the "Pension/Profit Sharing Plans"). Debtor served as trustee for both plans.

Prior to July 1, 1989, Thomas Soderberg completed more than two years of service with Hipple, P.C. He continued working for Hipple, P.C. for the entire plan year beginning July 1, 1989. Hipple, P.C. made contributions to the Pension/Profit Sharing Plans for the plan year beginning July 1, 1989, for Debtor, his wife, and employee, Lynn Pignolet Spruill. No contribution was made for employee Soderberg.

In January 1990, these two plans were amended and restated for purposes of compliance with the Internal Revenue Code of 1986. These plans were amended and restated effective July 1, 1989, and approved for termination effective December 31, 1989. On or about December 1990, Hipple, P.C. adopted the Merrill Lynch Master Simplified Employee Pension/Individual Retirement Account ("Merrill Lynch SEP/IRA"). Contributions were made to the Merrill Lynch SEP/IRA by Hipple, P.C. for Debtor and Soderberg, among others. Subsequently, Debtor's vested interests in the terminated Pension/Profit Sharing Plans were transferred into Debtor's Merrill Lynch SEP/IRA.

On April 19, 1991, the Internal Revenue Service ("IRS") filed a federal tax lien against Debtor in the amount of $416,906.21, which indebtedness is unpaid.

In 1992, Debtor opened a Simplified Employee Pension/Individual Retirement Account ("SEP/IRA") with First Union National Bank of Georgia ("First Union") and transferred all assets in the Merrill Lynch SEP/IRA to the First Union SEP/IRA. The SEP/IRA is self-directed with Debtor having discretion as to the investments. (Joint Stipulation of Facts, ¶ 55).

On or about February 1, 1994, Debtor incorporated Earth Services, Inc. ("Earth Services") and was appointed as its secretary and registered agent. He opened its only corporate checking account at First Union, and was named as a signatory on the account with Earth Services' president, William Kadri.

On or shortly before April 1, 1994, Debtor met with a First Union representative to discuss a loan from his SEP/IRA to Earth Services. On April 1, 1994, First Union disbursed $32,497 to Debtor from his SEP/IRA[1]. He deposited these funds into a certificate of deposit ("CD") with First Union in his individual name. First Union loaned Debtor $51,000 secured by the CD. Debtor then loaned the $51,000 to Earth Services. At the direction of Debtor, these loan pro-

---

1. Debtor directed that the SEP/IRA sell common stocks to generate cash to purchase the CDs.

(Joint Stipulation of Facts, ¶ 62).

ceeds were deposited into Earth Services' checking account. On April 20, 1994, First Union disbursed an additional $138,000 to debtor from his SEP/IRA. He deposited these funds into a second CD with First Union in his individual name. First Union loaned Debtor $90,000 secured by the second CD. Debtor then loaned the $90,000 to Earth Services. Pursuant to Debtor's instructions, $5,000 of the $90,000 loan proceeds was deposited into Earth Services' checking account and the remaining $85,000 was wire transferred to Essex Waste Management Company, Inc. Debtor states that these transactions with First Union were merely procedural steps required by First Union for the SEP/IRA to make loans to Earth Services. He insists the CDs are assets of the SEP/IRA.

To evidence these loans, Earth Services executed two unsecured promissory notes payable to "Robert J. Hipple, P.C. IRA/SEP for Robert J. Hipple" in the amounts of $51,000 and $90,000 respectively. Both notes provided for repayment of the loans with interest at the rate of 10.5 percent. The first note, in the amount of $51,000 plus interest, was due on July 1, 1994. The second note, in the amount of $90,000 plus interest, was due on July 31, 1994. Earth Services made no payment on either promissory note and executed a single replacement note dated July 31, 1994, payable to Debtor's SEP/IRA for the principal and accrued interest amount of $145,869.65.

Additionally, the record reflects that prior to August 1994, Debtor signed all checks issued by Earth Services. (Joint Stipulation of Facts, ¶¶ 26, 35–39). In fact, Debtor issued five Earth Services' checks disbursing $56,000 of loan proceeds and directed a wire transfer of the remaining $85,000. Two of the five checks totalling $20,000 were payable to Hipple, P.C.

2. Creditor P. Don Williams dismissed his objection to Debtor's exemption claim to the TIAA/CREF.

3. Trustee has subsequently filed a motion to sell this stock in which he alleges a value of approximately $16 or $17 per share which would indicate an increased value to approximately $80,-000.

On June 27, 1994, Debtor filed his Chapter 7 case and Bradley M. Hoyt was appointed as Trustee. In due course, Objectors timely filed the subject objections to Debtor's exemptions.[2]

As of March 31, 1996, the value of the SEP/IRA was $256,127.31. (Amendment to Joint Stipulation of Facts, ¶ 43). By agreement of Debtor, Trustee, and First Union, the loans secured by the CDs were paid and the balance of $26,858.12 was turned over to Trustee pending resolution of these objections. (Amendment to Joint Stipulation of Facts, ¶¶ 43–44). There is no stipulation as to the value, if any, of the Earth Services' note. The value of the TIAA/CREF accounts, as of July 31, 1995, was $143,919.32 (Joint Stipulation of Facts, ¶¶ 65–66).

Trustee reports that assets of the bankruptcy estate presently consist of 5,000 shares of Summit Bank Corporation stock with a market value of approximately $55,-000.00, plus dividends of $750.[3] (Amendment to Joint Stipulation of Facts, ¶ 75). A creditor has asserted there are allegedly concealed assets which may be recoverable, but the validity or value of such claims is unknown.

Trustee also reports that there are no claims entitled to priority under 11 U.S.C. § 507(a)(1–7) other than § 507(a)(1) fees and expenses for Trustee and his counsel which are estimated as follows:

Administrative Expenses Related to
Objections to Exemptions

| | | |
|---|---|---|
| Attorney for Trustee | Fees & Expenses | $ 8,200.00 |
| Trustee | Fees & Expenses | 2,800.00 |
| Special Counsel for Trustee | Contingent 1/3 | ? |

Administrative Expenses Not Related to
Objections to Exemptions

| | | |
|---|---|---|
| Attorney for Trustee | Fees & Expenses | $13,800.00 |
| Trustee | Fees & Expenses | 4,700.00 |

Pursuant to 11 U.S.C. § 328, Trustee employed special counsel on a contingency fee of one-third with regard to Trustee's objections to Debtor's exemptions.[4]

4. Counsel for creditor P. Don Williams may make application for compensation and costs in pursuing allegedly concealed assets but such will be payable only from assets actually recovered, if any.

812

## DISCUSSION

The issues before the court are (1) whether Debtor's SEP/IRA and TIAA/CREF accounts are excluded from property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2); and (2) whether Debtor's SEP/IRA is exempt under O.C.G.A. § 44-13-100(a)(2)(E) and (2.1)(C).

Objectors contend that Debtor's SEP/IRA is not valid or qualified because the funds rolled over from the Pension/Profit Sharing Plans were not qualified. Debtor, on the other hand, contends that the Pension/Profit Sharing Plans were qualified, as amended, and were terminated with IRS approval, thereby curing any qualification deficiencies.

The parties have stipulated that Hipple, P.C. made a contribution to the Hipple, P.C. Pension/Profit Sharing Plans for the plan year beginning July 1, 1989. Although employee Soderberg was eligible to participate, no contribution was made for him. These plans were amended and restated, however, for purposes of compliance and to obtain IRS approval for their termination effective December 31, 1989. (Joint Stipulation of Facts, ¶ 11 and ¶ 12; Exhibits "4" and "38–6"). The court's review of the application for determination upon termination and the IRS approval letter reveals that the question of the eligible employee's status was disclosed and considered with regard to Debtor's request to terminate. (Exhibit "38–6"). The amended plan satisfied applicable ERISA requirements, and its termination was duly approved by the IRS. The court, therefore, finds and concludes that the amended and restated Pension/Profit Sharing Plans cured any existing qualification deficiencies, were IRS qualified and were approved for termination. The objections are overruled.

Objectors also contend that the plan was terminated because Debtor is a "disqualified person" who engaged in prohibited transactions by self-dealing with his SEP/IRA funds. Debtor denies self-dealing and contends the referenced transactions were merely procedural steps required by First Union.

■ Under the instrument creating Debtor's SEP/IRA, he has the discretion to direct

investments or to dispose of assets. The trustee, First Union, has discretionary authority or responsibility in management and administration of the plan. Therefore, both are fiduciaries. A fiduciary is defined as a person who:

(A) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

. . .

(C) has any discretionary authority or discretionary responsibility in the administration of such plan.

26 U.S.C. § 4975(e)(3)(A) and (C).

■ Section 4975(e)(1)(A) defines a "disqualified person" as a person who is, inter alia, a fiduciary. Therefore, Debtor and First Union are disqualified persons. *Id.* Under § 4975 a "disqualified person" is prohibited from engaging in certain "prohibited transactions" defined to include:

any direct or indirect—lending of money or other extension of credit between a plan and a disqualified person; . . . act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interests or for his own account; and receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

26 U.S.C. § 4975(c)(1)(B)(E) and (F). If the individual or his beneficiary engages in prohibited transactions, the SEP/IRA terminates. 26 U.S.C. § 408(e)(2).

While unable to stipulate as to the ultimate facts on this issue, the parties have stipulated as to the testimony that First Union and Debtor would give if called to testify. They have submitted this stipulated testimony to the court for resolution to the extent the testimony is in conflict.[5]

Had Debtor accomplished loans from his SEP/IRA to Earth Services as contended, Objectors' position would be correct. Clear-

5. *See* Amendments to the Parties' Joint Stipulation of Facts.

ly, Debtor negotiated the arrangement with First Union to accomplish the loans to Earth Services. He exercised dominion and control over all facets of the transactions, including disposition of Earth Services' loan proceeds. In fact, he issued and signed two Earth Services' checks payable to Hipple, P.C. for $16,000 and $4,000 respectively which were paid from the loan proceeds. Thus, Debtor dealt with these loan proceeds for his own benefit. As a result, if the loan proceeds were assets of the SEP/IRA, pursuant to § 408(e)(2)(A), the SEP/IRA terminated. The court concludes, however, that these were not SEP/IRA loans.

The stipulated facts show that both First Union and Debtor were fiduciaries of the SEP/IRA. They agree as to the details of the transactions. First Union, as trustee, disbursed SEP/IRA funds to Debtor. Debtor deposited these funds into First Union CDs bearing Debtor's name. The CDs were then pledged to secure personal loans to Debtor. Debtor then loaned these funds to Earth Services, directed disbursement of loan proceeds to or for the benefit of Earth Services, and signed Earth Services' checks disbursing all loan proceeds deposited in Earth Services' account.

█ The disbursement of SEP/IRA funds to Debtor, the beneficiary of the account, resulted in a withdrawal of those funds from the trust. Upon withdrawal, those funds ceased to be SEP/IRA funds. The fact that Debtor benefitted directly or indirectly through his professional corporation is irrelevant. Therefore, the court finds and concludes that the $26,858.12 balance of the CDs and the Earth Services' notes, though payable "to the order of Robert J. Hipple, P.C. IRA/SEP for Robert J. Hipple," are property of Debtor's estate. The objections are sustained as to the CDs.

█ Section 541(a) broadly defines property of the estate. However, § 541(c)(2) limits § 541(a)'s broad sweep and excludes from property of the estate the debtor's interest in a trust that contains a transfer restriction enforceable under applicable nonbankruptcy law. The United States Supreme Court in *Patterson v. Shumate,* 504 U.S. 753, 759, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992) resolved a split among the circuits concerning the meaning of "applicable nonbankruptcy law." It held that the provision includes any relevant nonbankruptcy law. Thus, a trust with enforceable restrictions under either federal or state law is sufficient for purposes of § 541(c)(2).

It is undisputed that Debtor's SEP/IRA is a simplified employee pension established pursuant to 26 U.S.C. § 408(k). The term "simplified employee pension means an individual retirement account or individual retirement annuity ..." *Id.* An individual retirement account or annuity is "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets [the] requirements ..." set forth in § 408. 26 U.S.C. § 408(a). Debtor's SEP/IRA complies with those requirements.

█ Pursuant to § 408(a)(2), the plan must employ a bank as trustee. Section 408(h) provides that "[f]or purposes of this section, a custodial account shall be treated as a trust if the assets of such account are held by a bank ... and the custodian of such account shall be treated as the trustee thereof." In the present case, First Union and Debtor established a SEP/IRA trust in the form of a custodial account. (*See* Exhibit 22, The First Union IRA Fact Book). First Union is the custodian/trustee. Thus, Debtor's SEP/IRA is a trust under federal law.

█ In Georgia, no formal words are necessary to create an express trust. O.C.G.A. § 53-12-21. As required by O.C.G.A. § 53-12-20, a trust must be in writing and contain elements as follows: (1) the settlor's intention to create a trust; (2) trust property; (3) a beneficiary; (4) a trustee; and, (5) active duties of the trustee. Debtor's SEP/IRA contains each of these elements and satisfies the requirements of a trust under Georgia law.

Courts have consistently held IRAs that do not contain an anti-alienation provision to be property of the estate. *See In re Harless,* 187 B.R. 719 (Bankr.N.D.Ala.1995) (Chapter 7 Debtor's IRA is property of the

estate because it did not contain an enforceable anti-alienation provision); *In re Van Nostrand,* 183 B.R. 82, 85 (Bankr.D.N.J. 1995) (citing *In re Meehan,* 173 B.R. 818, 820 (S.D.Ga.1994) stating, "for a restraint on alienation provision to be enforceable pursuant to § 541(c)(2), the provision must be included in the investment plan"; *In re Meehan,* 173 B.R. at 821 "[t]he fact that Meehan's IRA contains no transfer restriction obviates further analysis of § 541(c)(2)"); *In re Slepian,* 170 B.R. 712, 715 (Bankr.S.D.Ala.1994) (because IRAs are not required to have restrictions on alienation and no such provision existed in the subject IRA, it did not "constitute a trust which has a restriction on the transfer of a beneficial interest of the Debtor" under § 541(c)(2)).

In a case decided prior to *Patterson v. Shumate, supra,* the Eleventh Circuit in *Lichstrahl v. Bankers Trust (In re Lichstrahl),* 750 F.2d 1488, 1490 (11th Cir.1985) [6] concluded that the purpose of a Florida spendthrift trust is to protect the beneficiary from himself and his creditors. It held further that such a trust fails where the beneficiary exercises "absolute dominion" over trust property. Holding that debtor's § 401 trusts were estate property, the court found such dominion in the debtor's control of the settlor, his professional corporation, through its power to amend or terminate the trustee. *See also Meehan v. Wallace (In re Meehan),* 173 B.R. at 821 ("the unassailable dominion and control Meehan possesses over her self-funded IRA is antithetical to the nature of a spendthrift trust"); *In re Brilley,* 148 B.R. 39, 40–41 (Bankr.C.D.Ill.1992) (the subject IRA was not excludable from property of the estate under federal law because § 408 was applicable to IRAs and not ERISA accounts, and it did not require, nor did the subject trust contain, an anti-alienation provision); *In re Harless,* 187 B.R. 719; *In re Herbert,* 140 B.R. 174 (Bankr.N.D.Ohio 1992); *In re Slepian,* 170 B.R. at 713–714; *In re Houck,* 181 B.R. 187 (Bankr.E.D.Pa.1995) (IRA was not a true trust and an anti-alienation provision

included in the plan was not the type of restriction enforceable under applicable non-bankruptcy federal law or applicable Pennsylvania spendthrift law for purposes of § 541(c)(2)); and *In re Kellogg,* 179 B.R. 379 (Bankr.D.Mass.1995) (chapter 7 Debtor's SEP/IRA which contained an anti-alienation provision was not enforceable under ERISA and was not a "spendthrift trust" for purposes of Massachusetts law). Thus, most courts have held that IRAs do not qualify as traditional spendthrift trusts under applicable law because IRAs are self-settled with the debtors retaining too much dominion and control over the plans, including the right of voluntary withdrawal.

■ The federal law applicable to SEP/IRA's is 26 U.S.C. § 408 et seq. Thus, it is a trust created by statute. Although it is not a traditional trust, the SEP/IRA was created to encourage self-employed individuals to establish pension or retirement trusts for themselves and their employees. Since § 408 prohibits restriction of the beneficiary's right of withdrawal and permits the beneficiary to retain the right to direct investments, the beneficiary retains dominion and control under federal law. Therefore, the court concludes that Debtor's SEP/IRA is not excluded from property of Debtor's estate under applicable nonbankruptcy federal law.

■ While federal law neither requires nor prohibits an anti-alienation clause in a § 408 SEP/IRA, it specifically requires that the beneficiary's withdrawal right not be restricted. 26 U.S.C. § 408(k)(4). Unlike the cases cited above, Debtor's SEP/IRA contains an anti-alienation provision. The instrument creating the SEP/IRA provides:

9(A). NON–ASSIGNABLE INTERESTS. The depositor shall not have any right to pledge any part of his custodial account as security for a loan or to assign, transfer or in any way create a lien on his custodial account or any payments to be made under this Plan. The custodial ac-

---

**6.** Most courts, prior to *Patterson,* held that "applicable nonbankruptcy law" meant state spendthrift law. These decisions were overruled by *Patterson v. Shumate, supra,* to the extent of a

determination that "applicable nonbankruptcy law" includes any relevant nonbankruptcy law whether state or federal.

count shall not be subject to any execution, attachment, garnishment or other legal process by a creditor of the Depositor except to the extent allowed by applicable law.

(Exhibit "22–11", The First Union IRA Fact Book).

This contractual provision is a limited anti-alienation clause, prohibiting both voluntary and involuntary transfers, that does not restrict Debtor's withdrawal rights. Because of this withdrawal feature, this provision does not qualify as a traditional spendthrift trust under O.C.G.A. § 53–12–28(a), (b) and (c).[7]

However, O.C.G.A. § 53–12–28(d) provides:

> (d) *Notwithstanding any other provision in this Code section to the contrary, a spendthrift provision in a bona fide pension or retirement trust is valid and enforceable with reference to the entire interest of the beneficiary in the income or in the principal or in both, even if the beneficiary is also the settlor of the trust,* except where a claim is made pursuant to a qualified domestic relations order as defined in 26 U.S.C. Section 414(p), or any subsequent statute of similar import. (Code 1981, § 53–12–28, enacted by Ga.L.1991, p. 810, § 1). (Emphasis added).

█ The commencement of Debtor's Chapter 7 bankruptcy did not change the special nature or terms of the trust. The contractual restrictions, the special nature of the SEP/IRA pension or retirement trust and the Debtor's right of withdrawal all remain effective. As noted by the *Patterson* court, creditors should not receive a windfall merely because a debtor files bankruptcy. Uniform treatment of property interests minimizes strategic manipulation of bankruptcy laws by creditors to gain access to otherwise inaccessible funds. *Patterson v. Shumate,* 504 U.S. at 764, 112 S .Ct. at 2249.

█ Debtor's SEP/IRA was created as a special statutory trust pursuant to 26 U.S.C.

§ 408. As such, it is a bona fide pension or retirement trust. To be excluded from the estate, § 541(c)(2) requires that the trust be subject to a restriction of "a transfer of a beneficial interest." It does not require a restriction on the entire interest of the beneficiary. In fact, O.C.G.A. § 53–12–28(c) specifically excepts six classes of claims from a valid and enforceable spendthrift trust. Similarly, § 53–12–28(d) provides that a spendthrift provision in a bona fide pension or retirement trust is valid and enforceable as to the beneficiary's entire interest, even if it is a self-settled trust. Since the contractual provision in Debtor's SEP/IRA serves as a restriction on the transfer of "a beneficial" interest of Debtor in his SEP/IRA, it satisfies the restriction requirement and is enforceable under O.C.G.A. § 53–12–28(d). Therefore, when Debtor's bankruptcy case was filed, his SEP/IRA trust was subject to a restriction on a transfer of a beneficial interest in his trust. 11 U.S.C. § 541(c)(2).

This court believes that a Georgia court considering Debtor's SEP/IRA, and the protection accorded such special pension or retirement trusts, would conclude that it is valid and enforceable under O.C.G.A. § 53–12–28(d) notwithstanding Debtor's right of withdrawal. For § 541(c)(2) purposes, O.C.G.A. § 53–12–28(d) is "applicable non-bankruptcy law." Therefore, Debtor's SEP/IRA is excluded from Debtor's estate.

█ The court now turns to the consideration of whether the TIAA/CREF accounts are excluded from property of the estate pursuant to § 541(c)(2). Each contract contains an anti-alienation provision. (Exhibits 25, 26; Clauses 15 and 16 of the TIAA/CREF contracts). These are spendthrift provisions which prohibit the voluntary or involuntary transfer of Debtor's beneficial interests. The accounts were established by Debtor's former employer, and he has no access to the corpus and no dominion or control over the accounts. Therefore, they satisfy the requirements for valid and enforceable spendthrift trusts under O.C.G.A.

---

7. In the nonbankruptcy context, creditors cannot reach the SEP/IRA contributions since O.C.G.A. § 18–4–22 exempts § 408 trusts from garnishment. Although not applicable to this case, the court also notes that O.C.G.A. § 44-13–100(2.1) was amended (effective 1995) to provide a specific exemption for § 408 trusts.

§ 53–12–28. For purposes of § 541(c)(2), O.C.G.A. § 53–12–28 is applicable nonbankruptcy law.

Trustee acknowledges that TIAA/CREF accounts are generally excluded from estate property pursuant to § 541(c)(2). *See Morter v. Farm Credit Services,* 937 F.2d 354 (7th Cir.1991) *cert. denied, Farm Credit Services v. Morter,* 505 U.S. 1204, 112 S.Ct. 2991, 120 L.Ed.2d 868 (1992); *In re Fink,* 153 B.R. 883 (Bankr.D.Neb.1993); *In re Lyons,* 148 B.R. 88 (Bankr.D.Dist.Col.1992); *Dowden v. Teachers Insurance and Annuity Assn. and College Retirement Equities Fund (In re Baxter),* 135 B.R. 353 (Bankr.E.D.Ark.1992). The restrictive language in the *Baxter, Morter* and *Lyons* cases appears to be the same as that found in debtor's TIAA/CREF accounts. Those courts concluded that the language in the TIAA/CREF agreements restricted the beneficiaries and creditors from reaching the funds, and the accounts were excluded from property of the estate under § 541(c)(2). *Id.*

It is firmly established in case law that a federal tax lien attaches and is enforceable against a debtor's interest in a pension or retirement trust, whether or not the debtor is eligible for present benefits. *United States v. National Bank of Commerce,* 472 U.S. 713, 719–720, 105 S.Ct. 2919, 2923–24, 86 L.Ed.2d 565 (1985) (federal tax lien language is broad and "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have."); *Bank One Ohio Trust Co., N.A. v. United States,* 80 F.3d 173, 176 (6th Cir.1996) (federal tax lien can attach to a spendthrift trust stating that a "... restraint on alienation is not an aspect of the substantive [property] right and thus cannot serve to defeat the federal tax lien" (citation omitted)); *Raihl v. United States,* 152 B.R. 615 (9th Cir. BAP 1993) (federal tax lien attached to debtor's investment and pension plans whether or not plans were included in property of the estate); and *In re Cook,* 150 B.R. 439 (Bankr.E.D.Ark. 1993) (the present right to receive pension benefits in the future is a property interest and a federal tax lien attaches to all property of debtor including property exempted from the estate).

In the case of *In re Perkins,* 134 B.R. 408 (Bankr.E.D.Cal.1991), the Chapter 13 debtor contended that his ERISA qualified pension plan was excluded from property of the estate under § 541(c)(2). Therefore, he argued that under § 506(a), it could not be security for the federal tax lien. That court stated

> Further disposing of the Perkins' argument is the language of section 506, which indicates that the court is to value a secured party's interest according to the "interest of the estate in the property" and not according to whether the property meets the precise definition of "property of the estate" as set forth in section 541. While the phrase "interest of the estate in the property" is not defined by statute, it is evident in this case that even if the property were not deemed "property of the estate," the bankruptcy estate has an interest in the pension which is, at the very least, sufficient to allow attachment and levy on Mr. Perkins' pension rights by the IRS. This interest is, therefore, properly considered in determining the value of the government's secured claim pursuant to section 506.

*Id.* at 411.

The court concluded that the Chapter 13 estate had a sufficient interest in debtor's pension rights to require that the value of those rights be considered in determining the secured status of the IRS claim.

Relying on *In re Lyons,* Trustee contends that the debtor's pension retirement trust accounts are property of the estate under § 541(a) because of the pre-petition federal tax lien on Debtor's property. That case involved a Chapter 13 debtor's objection to an IRS claim secured by a pre-petition recorded tax lien. That debtor also contended that his TIAA/CREF accounts were excluded from property of his Chapter 13 estate under § 541(c)(2) and, could not be security for the federal tax lien under § 506(a). The *Lyons'* court held that pursuant to *Patterson v. Shumate, supra,* "applicable nonbankruptcy law" encompassed federal tax lien law and since the federal tax lien statute overrides state law restrictions, the IRS could reach the retirement funds or benefits. The *Lyons'* court stated that "[t]o the extent the IRS can

reach the debtor's rights, they are property of the estate," *In re Lyons*, 148 B.R. at 93. The court concluded that the restrictions in debtor's pension plans were not "enforceable under applicable nonbankruptcy law" with respect to the IRS. *Id.* at 94. The IRS' claim was held secured to the extent of the value of the debtor's pension rights.

Similarly, in *In re Anderson*, 149 B.R. 591 (9th Cir. BAP 1992), the Chapter 13 debtor sought a determination of the nature and extent of a pre-petition federal tax lien. Based on *Patterson v. Shumate, supra,* the court held that debtor's ERISA qualified pension plan was excluded from property of the estate pursuant to § 541(c)(2). In addressing the issue of subject matter jurisdiction, the court noted that 28 U.S.C. § 1334(b) and (e) [8] vest the court with exclusive jurisdiction of "all property ... of the debtor ... and ... property of the estate." *Id.* at 594. The court affirmed the bankruptcy court finding that the debtor's beneficial interest in his pension or retirement plan was property, or a right to property, to which the IRS tax lien attached. Thus, even though excluded from property of the estate, debtor's pension plan was subject to the IRS lien.

Trustee's reliance upon the *Lyons* case is misplaced. That court did not hold that the attachment of the federal tax lien voided the § 541(c)(2) exclusion for all purposes. Rather it held that the IRS tax lien attached to debtor's pension rights, that the plan restrictions were unenforceable with respect to the IRS, and its claim was secured to the extent of the value of debtor's pension plan or rights. *See Lyons, supra.* In the Chapter 13 context, the "debtor" and his "estate" retained a sufficient interest in his pension plan to require considerations of its value in determining the secured status of the IRS claim.

In the present case, Debtor had a pre-petition vested interest in his SEP/IRA and TIAA/CREF pension or retirement trusts. Upon filing, the bankruptcy court was vested with exclusive jurisdiction of all property or property rights "of the debtor" and "of the estate." This includes all property of the estate under § 541(a) and § 541(c)(1); all property of the debtor excluded from the estate under § 541(c)(2); and all property exempted by the debtor from property of the estate.

The IRS holds an unavoided federal tax lien of $416,906 which attached to all of the debtor's property, including his pension or retirement plans or rights. As noted in *Perkins*, "[t]he federal [tax] statute relates to the taxpayer's rights to property and not to his creditors' rights." *In re Perkins*, 134 B.R. at 411. The federal tax lien is an encumbrance on Debtor's trust interests. It is not the type of restriction covered by § 541(c)(2). The § 541(c)(2) exclusion does not void, bind or exempt the attachment or enforceability of the federal tax lien. Rather, the exclusion merely continues Debtor's vested interests in his pension or retirement trusts subject to the encumbering federal tax lien. The court concludes, therefore, that Debtor's TIAA/CREF pension or retirement trusts are excluded from property of his bankruptcy estate pursuant to § 541(c)(2). Trustee's objections to Debtor's exemption claim to the TIAA/CREF accounts are overruled.[9]

Trustee reports that assets of this estate total approximately $55,750. As determined herein, the estate property also includes an additional $26,858.00, bringing the total to at least $82,608. He further reports there are no nonpriority claims under 11 U.S.C. § 507(a)(1–7), except the § 507(a)(1) trustee and attorney's fees and expenses. The fees and expenses, unrelated to the retirement or pension trust objections are estimated to total $18,500. Thus, the available estate assets of $82,608 are more than sufficient to pay these and any reasonable future fees or expenses likely to be incurred.[10]

This case presents the prospect that, even if the SEP/IRA and TIAA/CREF trusts

---

**8.** Section 1334(d) redesignated (e) by October 22, 1994 amendment.

**9.** The court need not consider whether the SEP/IRA and TIAA/CREF accounts are exempt under Georgia exemption law because the accounts are excluded from property of the estate.

**10.** *See* note 3 *supra* at p. 811.

were determined to be property of this estate, their administration would serve no apparent beneficial bankruptcy purpose. The IRS holds a federal tax lien of $416,900 secured by the SEP/IRA and TIAA/CREF pension or retirement trusts valued at approximately $400,046. If the Trustee administers these trust funds and the federal tax lien is subordinated under § 724(b) to the § 507(a)(1–7) claims, the net funds available for payment on the federal tax claim could be reduced by as much as 61 percent.[11]

In such event, trustee administration would not benefit the estate or its creditors. It would, in fact, actually damage the federal tax lien claimant. The only § 507(a)(1–7) bankruptcy claim likely to be paid from these funds would be the attorney's fees for special counsel employed to challenge Debtor's claim to these trust accounts. This would be an absurd result.

For the foregoing reasons, the court concludes that the objections should be sustained in part and denied in part. Accordingly, it is

**ORDERED** that Objectors' objections are sustained in part and the $26,858.12 balance of the CDs and the notes payable to Hipple, P.C. IRA/SEP are determined to be property of the estate; and it is

**FURTHER ORDERED** that Objectors' objections to the Debtor's exemptions are **overruled** in part and the SEP/IRA and TIAA/CREF accounts are determined to be property of the Debtor which are **excluded**

from property of the estate pursuant to § 541(c)(2).

The clerk is directed to serve a copy of this order upon Debtor, counsel for Debtor, the Chapter 7 Trustee, special counsel for the trustee, and the United States Trustee.

IT IS SO ORDERED.

11. For example, assuming an early withdrawal tax penalty of 10 percent, the lowest income tax rate of 28 percent and a special counsel fee of one-third of the net recovery, the amount payable to the IRS on its tax lien would be as follows:

| TRUST ACCOUNTS | | VALUE | |
| --- | --- | --- | --- |
| SEP/IRA | | $256,127 | |
| TIAA/CREF | | 143,919 | |
| Total | | | $400,046 |
| Less: | | | |
| (1) | Estimated 10% tax penalty for early withdrawal | 40,000 | |
| (2) | Est. income tax at lowest rate of 28% | 112,012 | |
| (3) | Trustee & general counsel fees & expenses | 11,043 | |
| (4) | Est. special counsel fees & expenses | 83,000 | |
| (5) | Other nonpriority claims under 11 USC § 507(a)(1–7) | 0 | |
| Total | | | $246,055 |
| Balance to IRS | | | $153,991 |

Even if the estimated income taxes or penalty could be reduced, there would still be a substantial reduction in the amount distributable to the IRS.

The trustee application to employ special counsel provides for employment on a one-third contingency of the gross recovery which would change this amount substantially if allowed.

This also raises a question regarding necessity, reasonableness or benefit under 11 U.S.C. § 328 and § 330.