In re Jill Elisa CHAMBERS, Debtor.

No. 10–90157–CRM.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

May 26, 2011.

Michael R. Rethinger, Law Offices of Michael R. Rethinger, Atlanta, GA, for Debtor.

Dale R. F. Goodman, Atlanta, GA, Trustee.

## *MEMORANDUM OPINION ON STATUS OF CAMPAIGN FUNDS*

C. RAY MULLINS, Bankruptcy Judge.

The issue before the Court is whether campaign contributions made to a candidate for public office ("campaign funds"), who files bankruptcy without incorporating the campaign, are property of the bankruptcy estate. The Debtor initially raised this issue in a Complaint for Contempt and Request for Damages and Sanctions for Willful Violation of the Automatic Stay (the "Complaint") filed October 22, 2010, which commenced Adversary Proceeding No. 10–6588–CRM (the "Adversary Proceeding"). In the Complaint, Debtor alleged that a garnishment order froze certain bank accounts, including her State Representative Campaign Account (a Wachovia government checking account) containing the subject campaign funds, in violation of section 362 of the Bankruptcy Code. The Court held an expedited hear-

ing on October 26, 2010, and thereafter entered an Interim Order requiring the campaign funds be held in trust by the Chapter 13 Trustee. Subsequently, the Court closed the Adversary Proceeding following Debtor's Motion for Voluntary Dismissal.

However, the issue of whether the campaign funds are property of the bankruptcy estate remains relevant to confirmation of a chapter 13 plan. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(E). The Debtor and creditor 773 779 Miami Circle, LLC ("Miami Circle") briefed the issue of whether the campaign funds are property of the estate. The Court held a hearing on May 11, 2011, and orally announced that the campaign funds are property of the estate.

## FACTUAL BACKGROUND

On October 6, 2010, the Debtor filed a chapter 13 petition. At the time of filing, the Debtor was running a campaign for re-election as a Georgia State Representative. The Debtor did not incorporate her campaign. Prior to the bankruptcy filing, Miami Circle filed a garnishment order on Wachovia Bank, which froze Debtor's bank accounts, including her campaign funds account. The Debtor filed chapter 13 in an attempt to free the campaign funds from garnishment, make them available to her campaign, and shield them from the reach of her personal creditors, including Miami Circle.

## CONCLUSIONS OF LAW

The scope of section 541(a) of the Bankruptcy Code is intentionally broad. It not only includes property in which a debtor has an equity interest, it includes all property in which a debtor has *any* interest. 11 U.S.C. § 541(a); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The United States Supreme Court stated

that section 541(a) sweeps in, as property of the estate, even a debtor's equitable right of redemption. *Whiting Pools,* 462 U.S. at 204–05, 103 S.Ct. 2309. Following this decision, *Whiting Pools* has had a talismanic presence in bankruptcy law, affecting a wide range of subject matter and guiding courts in nearly all circuits.[1] Although the scope of section 541(a) is broad, it is limited to the rights debtor had prepetition. Section 541(a) cannot alter the pre-petition interest a debtor had in the property; the estate merely steps into a debtor's prepetition shoes. *Whiting Pools,* 462 U.S. at 205, 103 S.Ct. 2309. This attribute is commonly seen in the context of security interests. For example, if there are liens attached to account funds prepetition, the inclusion of the funds as property of the estate does not destroy the liens; the secured creditors would be entitled to adequate protection of their interest. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). Section 541(a) does nothing other than characterize property of the estate. It does not determine which creditors are entitled to the estate property.

The breadth of the concept of property of the estate is reinforced by section 541(c)(1)(A) which states, "... an interest of the debtor in property becomes property of the estate under section (a)(1) ... notwithstanding any provision in ... applicable nonbankruptcy law ... that restricts or conditions transfer of such interest by the debtor." 11 U.S.C. § 541(c)(1)(A). Section 541(c)(1)(A) is commonly referred to as the "anti-alienation provision."

---

1. *Ragosa v. Canzano (In re Colarusso),* 295 B.R. 166, 172 (1st Cir. BAP 2003) (discussing *Whiting Pools* in the context of a chapter 7 trustee's ability to sell property of the estate); *In re Sheridan,* 2010 WL 3222407, 2010 Bankr.LEXIS 2712 (Bankr.D.Vt. Aug. 13, 2010) (discussing *Whiting Pools* in the context of what rights, if any, are property of the estate if the estate is created after replevin and before sale); *In re Singer,* 368 B.R. 435 (Bankr.E.D.Pa.2007) (discussing *Whiting Pools* in the context of a car being property of the estate notwithstanding prepetition repossession); *In re Biedermann Mfg. Indus.,* 2011 WL 1299321, 2011 Bankr.LEXIS 1329 (Bankr.E.D.N.C. Mar. 31, 2011) (discussing *Whiting Pools* in the context of whether a trustee can recover funds held by a bank when that bank is owed more than the amount in the account); *Murray v. Guillot (In re Guillot),* 250 B.R. 570 (Bankr.M.D.La. 2000) (discussing *Whiting Pools* in the context of whether a debtor's lien interest is property of the estate); *In re Senior Hous. Alternatives, Inc.,* 444 B.R. 386 (Bankr.E.D.Tenn.2011) (discussing *Whiting Pools* in the context of whether a debtor's interest in rents from its business is property of the estate when debtor had executed an assignment of rents in favor of a creditor; *Illinois Dep't of Revenue v. Valentino's Restoration & Cleaning Serv. (In re Valentino's Restoration & Cleaning Serv.),* 215 B.R. 153 (Bankr.N.D.Ill.1997) (discussing *Whiting Pools* in the context of whether a debtor's bank account, subject to an IRS tax levy, is property of the estate); *Hoggarth v. Kaler (In re Midwest Agri Dev. Corp.),* 387 B.R. 580, 585 (8th Cir. BAP 2008) (discussing *Whiting Pools* in the context of whether a judgment lien creditor's lien remains with the collateral when there was a prepetition levy and seizure of the collateral but no sale); *Sneath v. GMAC Mortg.,* 2010 WL 3860655, 2010 U.S. Dist. LEXIS 103930 (D.Nev. Sept. 27, 2010) (discussing *Whiting Pools* in the context of causes of action being property of the estate); *In re Hundley,* 2007 WL 1042135, 2007 U.S. Dist. LEXIS 26206 (D.Kan. Apr. 6, 2007) (discussing *Whiting Pools* in the context of whether the stay is violated by a creditor who repossessed debtor's car prepetition and does not return the vehicle once it receives notice of the bankruptcy); *United States v. Challenge Air Int'l (In re Challenge Air Int'l),* 952 F.2d 384 (11th Cir.1992) (relying on Whiting Pools in the context of whether a trustee can force turnover of funds levied prepetition by the IRS from a third party).

■ An exception to the anti-alienation provision is found in section 541(c)(2) of the Bankruptcy Code which excludes from the bankruptcy estate a debtor's interest in a spendthrift trust. 11 U.S.C. § 541(c)(2); *Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Section 541(c)(2) states, "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). Applying the canon of statutory construction that the express mention of one thing excludes all others *(expressio unius est exclusio alterius)* to an integrated reading of sections 541(a), (c)(1)(A), and (c)(2), leads to the conclusion that creating a spendthrift trust is the only state law property transfer restriction that allows a debtor's interest in property to escape the reach of section 541(a).

## LEGAL ANALYSIS

■ The issue before the Court is a matter of first impression. Application of section 541 to the facts directs the Court to conclude that the campaign funds are property of the estate.

The Debtor has a property interest, however restricted by state law, in the campaign funds. Therefore, per section 541(a) and *Whiting Pools*, the campaign funds constitute property of the estate. 11 U.S.C. § 541(a)(1). Nothing more nor less than the Debtor's prepetition interest in the campaign funds becomes property of the estate. *Whiting Pools*, 462 U.S. at 205 n. 8, 103 S.Ct. 2309 ("... § 541(a)(1) does not expand the rights of the debtor in the hands of the estate ..."). All section 541(a) does is define the estate and what the estate is comprised of; it does not address which creditors have rights to estate property. Because section 541(a)

does nothing more than characterize what constitutes property of the estate, the Court does not reach the issue of whether certain creditors (e.g. campaign creditors) have priority claims with respect to the campaign funds. Section 541(a) including the campaign funds as property of the estate is comparable to the funds being held in the hands of a fiduciary.

Section 541(c)(1) provides further support for this inclusion by affirmatively invalidating any use restriction state law places on the campaign funds. The relevant Georgia state law restricting a candidate's use of campaign funds, is Georgia Code sections 21–5–33(a)–(c). O.C.G.A. §§ 21–5–33(a)–(c). Specifically, Georgia Code section 21–5–33(a) limits what campaign funds may be spent on:

> Contributions to a candidate, a campaign committee, or a public officer holding elective office and any proceeds from investing such contributions shall be utilized only to defray ordinary and necessary expenses, which may include any loan of money from a candidate or public officer holding elective office to the campaign committee of such candidate or such public officer, incurred in connection with such candidate's campaign for elective office or such public officer's fulfillment or retention of such office.

O.C.G.A. § 21–5–33(a). Georgia Code section 21–5–33(c) describes how a candidate may *not* treat the campaign funds: "[c]ontributions and interest thereon, if any, shall not constitute personal assets of such candidate or such public officer." O.C.G.A. § 21–5–33(c); *see* discussion *infra* for more on the meaning of Georgia Code section 21–5–33(c). Although Georgia Code sections 21–5–33(a)–(c) restrict use of the campaign funds, the anti-alienation provision prevents the state law from excluding the funds from becoming property of the estate.

■ Additionally, the spendthrift trust exception to the anti-alienation provision does not apply here because the campaign funds are not held in a spendthrift trust under Georgia law. (Neither party argued "applicable nonbankruptcy law" other than state law potentially created a spendthrift trust.) Under Georgia law, a spendthrift trust is a type of express trust and therefore must have a trust instrument "created or declared in writing and signed by the settlor." O.C.G.A. §§ 53–12–20, 53–12–2(14); *see also* O.C.G.A. §§ 53–12–2(12), 53–12–80. Here, there is no evidence of a writing creating an express trust, let alone an express trust containing a valid spendthrift provision. *See* O.C.G.A. § 53–12–80(a); *In re Hipple*, 225 B.R. 808 (Bankr.N.D.Ga.1996) (Cotton, J.) (The bankruptcy court, interpreting Georgia spendthrift trust law, found an IRA's anti-alienation provision clause failed to be a valid spendthrift provision because it did not restrict the beneficiary's withdrawal rights.). Even if the campaign funds were held in a trust, the writing creating that trust would have to unequivocally state the spendthrift provision and the Debtor would have to lack access to the funds. In *Hipple*, Judge Cotton noted, " . . . the purpose of a . . . spendthrift trust is to protect the beneficiary from himself and his creditors . . . such a trust fails when the beneficiary exercises 'absolute dominion' over trust property." *In re Hipple*, 225 B.R. at 814. The Debtor presented no evidence of her lack of access to the campaign funds, because Georgia's campaign finance law does not restrict *access*. In contrast to a spendthrift trust, Georgia's campaign finance law theoretically allows candidates to be lavish and irresponsible in spending their campaign funds, it simply restricts the *kinds* of expenses that can be paid from the campaign funds.

Further, the Court does not find the limitation in Georgia Code section 21–5–33(c), that campaign funds "shall not constitute personal assets," to be a "restriction on the transfer of a beneficial interest of the debtor in a *trust*" as required by section 541(c)(2). O.C.G.A. § 21–5–33(c); 11 U.S.C. § 541(c)(2) (emphasis added). Again, without a valid trust, the spendthrift trust exception to the anti-alienation provision does not apply.

Although this is a matter of first impression for the Court, the bankruptcy court's ruling in *In re Denton* is instructive. *In re Denton*, 169 B.R. 608 (Bankr.W.D.Tex. 1994). At issue in *Denton* was whether a Texas state representative's campaign fund account was property of the bankruptcy estate. The *Denton* court found section 541(a) reached the campaign funds, and that the anti-alienation provision applied because the relevant Texas Election Code provisions did not "convert a campaign fund account into a trust fund." *In re Denton*, 169 B.R. at 612. The *Denton* court also noted that the "beneficiary of a valid spendthrift trust cannot reach assets of the trust unless and until a trustee distributes them," whereas the *Denton* debtor was "in a position to spend any and all of such [campaign] funds for the purposes [the debtor saw] fit." *Id.* Although the *Denton* court addressed Texas state law, the Texas and Georgia campaign finance laws are similarly worded and structured; the Court finds the intent of the two states' laws to be functionally identical.[2]

2. *Compare* TEX. CODE ANN. § 253.035(d)(1) (a candidate can expend campaign funds "to defray ordinary and necessary expenses incurred in connection with activities as a candidate or in connection with the performance of duties or activities as a public officeholder."), *with* O.C.G.A. § 21–5–33(a) (a candidate can expend campaign funds "to defray ordinary and necessary expenses . . . incurred in connection with such candidate's campaign

Like the Texas campaign finance law, the Georgia campaign finance law restricts use; it does not determine ownership. Any attempt to determine ownership is not clearly stated in Georgia Code section 21–5–33. Further, the only available legislative history on Georgia Code section 21–5–33 supports the law's purpose being to restrict use; any latent purpose of the law to determine ownership evaded inclusion in the available legislative history. Mary Joe Schrade, *Elections: Ethics in Government: Regulate Lobbyist Gifts and Contributions to Public Officers and Limit Campaign Contributions*, 9 Ga. St. U.L.Rev. 247, 257–59 (1992) (the "peachsheet"). Specifically, while the peachsheet makes no mention of the purpose of the law being to define property rights, it is riddled with language and discussion on how the law was meant to qualify or restrict the use of campaign funds. *Id.*

CONCLUSION

The campaign funds are property of the estate pursuant to section 541 of the Bankruptcy Code and *Whiting Pools* and its progeny. The court's decision in *Denton* and the legislative history of Georgia's campaign finance law support this conclusion. Further, section 541 of the Bankruptcy Code is agnostic. If this outcome has political implications, they are simply a derivative, necessary consequence of the Court's adherence to the Bankruptcy Code and controlling case law.

The Clerk of Court is directed to serve a copy of this Order on Debtor, Debtor's Counsel, 773 779 Miami Circle, LLC, 773 779 Miami Circle, LLC's Counsel, the

for elective office or such public officer's fulfillment or retention of such office."); *Compare* TEX. CODE ANN. § 253.035(a) ("[a] person who accepts a political contribution as a candidate or officeholder may not convert the

Chapter 13 Trustee, and all parties in interest.

**IT IS ORDERED.**

contribution to personal use."), *with* O.C.G.A. § 21–5–33(c) ("[c]ontributions ... shall not constitute personal assets of such candidate or such public officer.").