**In re The IT GROUP, INC., et al., Debtors.**

**Official Committee of Unsecured Creditors of The IT Group, Inc., et al., on behalf of the Estate of The IT Group, Inc., et al., Plaintiff,**

v.

**Anderson Equipment Company Stark's Gravel Company, Defendants.**

Bankruptcy No. 02–10118 MFW.
Adversary Nos. A 04–50416(PBL), A 04–50864(PBL).

United States Bankruptcy Court, D. Delaware.

Nov. 1, 2005.

Victoria Watson Counihan, Greenberg Traurig, LLP, Jamie Lynne Edmonson, Landis Rath & Cobb LLP, Gregg M. Galardi, Marion M. Quirk, Gary Adam Rubin, Skadden, Arps, Slate, Meagher & Flom LLP, Eric Michael Sutty, The Bayard Firm, Rachel Lowy Werkheiser, Pachulski, Stang, Ziehl, Young & Jones, John C. Phillips, Jr., Phillips, Goldman & Spence, Wilmington, DE, for Debtors.

Brian J. McLaughlin, Monzack and Monaco, P.A., John D. Demmy, Stevens & Lee, P.C., Wilmington, DE, for Defendants.

## MEMORANDUM OPINION [1]

PAUL B. LINDSEY, Bankruptcy Judge.

### I. Background

In these adversary proceedings, the Plaintiff, The IT Litigation Trust, as the successor to The IT Group, Inc. and its affiliated debtors and The Official Committee of Unsecured Creditors ("Plaintiff"), seeks to avoid and recover from the Defendants, Anderson Equipment Company ("Anderson") and Stark's Gravel Company ("Stark's Gravel"),[2] under §§ 547 and 550 of the Bankruptcy Code,[3] certain pre-petition transfers by a subsidiary of the Debtors, The IT Group, Inc., et al. ("Debtors") to Defendants. Defendants have filed individual Motions for Summary Judgment (the "Motions") with supporting briefs under Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Plaintiff's Response to both Motions was contained in its Omnibus Brief in Opposition to Defendants' Motions for Summary Judgment. Defendants filed Reply Briefs, and these matters are now ripe for consideration by the Court. Both Motions raise identical issues and are therefore addressed together.

### II. Jurisdiction and Venue

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). These are core proceedings under 28 U.S.C. § 157(b)(2)(A), (B), (F), and (O). Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1409.

### III. Standard for Summary Judgment

Federal Rule 56(c) provides that summary judgment should be granted when "the pleadings, depositions, answers to in-

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7052.

2. Anderson and Stark's Gravel will be collectively referred to as "Defendants."

3. 11 U.S.C. §§ 101 et seq. References herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code unless the contrary clearly appears.

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R. Civ. P. 56(c). *See also, Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, all factual inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). After sufficient proof has been presented to support the motion, the burden shifts to the nonmoving party to show that genuine issues of material fact still exist and that summary judgment is not appropriate. *Matsushita,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538. A genuine issue of material fact is present when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

## IV. The Facts

### A. *Anderson Equipment Company*

Anderson's Motion is accompanied by the deposition of its Credit Manager, and the facts set out therein are largely uncontroverted.[4] Anderson is a corporation located in and authorized to do business in the State of New York. In June and July of 2001, IT Corporation, a subsidiary of Debtor, rented heavy equipment from Anderson for the improvement of certain real property owned by Niagara Mohawk Power, which was responsible for financing the project. In June and September of 2001, IT Corporation rented heavy equipment from Anderson for use on a project commonly known as "the York Oil Superfund Site Project" in Moira, New York, for which ALCOA, Inc. was the entity primarily responsible. In July of 2001, IT Corporation rented heavy equipment from Anderson for use on a project commonly known as "the Ciba Specialty Chemicals Corporation Project" located at the Ciba Site in Glen Falls/Queensbury, New York. Hercules Incorporated was the owner of the real property to be improved and was primarily responsible for financing the project. In November and December of 2001, Anderson received, in satisfaction of invoices issued by Anderson for the equipment rental: Two (2) payments totaling $6,795.90 on the Niagara Mohawk project; one (1) payment in the amount of $3,601.62 on the Ciba project; and two (2) payments totaling $85,966.03 on the York Oil project.

On January 16, 2002, Debtor and a number of its subsidiaries, including IT Corporation, filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and on January 10, 2004, Plaintiff filed its Complaint against Anderson, seeking to avoid and recover the transfers under §§ 547 and 550.

### B. *Stark's Gravel Company*

Stark's Gravel's Motion is supported by the Affidavit of one of its owners, Judith A.

---

**4.** Although not controverting factual assertions, Plaintiff would have the Court deny Defendant's motion due to its failure to provide more details.

Stark. IT Corporation entered into a contact for a remediation project on land in Moira, New York. The project was in connection with the ALCOA York Oil Superfund Site. Stark's Gravel was hired as a subcontractor on the project and pursuant to purchase orders from IT Corporation, Stark's Gravel provided crushed limestone, gravel, clay, and other fill materials used in the remediation. Stark's Gravel allegedly received one payment from IT Corporation in the amount of $42,655.00. Plaintiff filed its Complaint against Stark's Gravel on January 10, 2004 to avoid and recover this payment as a preferential transfer.

## V. Discussion

Defendants have moved for summary judgment alleging that Plaintiff cannot support its burden of proving that the payments at issue are preferences pursuant to § 547(b).[5] In support of their Motions, Defendants assert that the transfers at issue were in fact trust property under the New York lien law,[6] and that the transfers therefore, cannot be avoided under § 547(b) because the payments did not constitute "an interest of the debtor in property." Additionally, Anderson contends that even if not covered by the New

York lien law, the transfers may not be avoided because the transfers in question were in payment of debts incurred, and the transfers were made, "in the ordinary course of business or financial affairs of the debtor and the transferee" and "according to ordinary business terms," as those terms are employed in § 547(c)(2).

Plaintiff, in its Omnibus Response, addresses Defendants' statutory trust argument by first contending that the New York lien law, to the extent that it conflicts with federal bankruptcy law, is preempted by federal law under the Supremacy Clause of the United States Constitution and is therefore invalid.[7] For this proposition, Plaintiff cites *Hechinger Investment Company of Delaware, Inc. v. M.G.H. Home Improvement, Inc. (In re Hechinger)*, in which Judge Peter J. Walsh of this Court held that certain provisions of Michigan law were preempted by § 547, as "an obstacle to the accomplishment and execution of the full purposes and objectives that Congress had in enacting the Bankruptcy Code." *Hechinger Investment Company of Delaware, Inc. v. M.G.H. Home Improvement, Inc. (In re Hechinger)*, 288 B.R. 398, 402 (Bankr.D.Del., 2003) (quoting *California Federal Sav. and Loan Ass'n v.*

---

5. Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b).

6. New York lien law, Article 3–A, §§ 70–79a.

7. Plaintiff also addressed Anderson's ordinary course of business argument. In view of the Court's disposition of the proceeding on the statutory trust issue, it is unnecessary for the Court to address § 547(c)(2), except to note that the ordinary course of business defense is a highly fact-intensive issue, and it is rare indeed for it to be resolved in defendant's favor on a motion for summary judgment.

*Guerra,* 479 U.S. 272, 281, 107 S.Ct. 683, 93 L.Ed.2d 613, (1987)) (emphasis omitted). *California Federal Sav. and Loan Ass'n v. Guerra* involved a claim that a California statute mandating leave and reinstatement for pregnant employees was in conflict with Title VII of the 1964 Civil Rights Act and should be preempted and invalidated. After discussion, the Supreme Court determined that preemption was not appropriate.

In *Hechinger,* Judge Walsh also refers to *Jones v. Aristech Chemical Corp.,* where the court stated that § 547(b) "is designed to help creditors by allowing the debtor or trustee to avoid transactions that favor certain creditors, and recover the funds for equitable distribution to all the creditors." *Hechinger,* 288 B.R. 398, 402 (quoting *Jones v. Aristech Chemical Corp.,* 157 B.R. 720, 723 (N.D.Ga.,1993)). The *Jones* case involved a determination of when a transfer by check occurs for purposes of the "new value" exception contained in § 547(c)(4). The issue of preemption was not involved in the case.

In reply to Plaintiff's opposition, Defendant cites *Selby v. Ford Motor Co.,* 590 F.2d 642 (6th Cir.1979), in which the Court held that the Michigan law which was held to have been preempted in *Hechinger* was valid and that property held in trust under that law by a contractor for the benefit of subcontractors could not be avoided under § 547(b). Defendant also directs the Court's attention to *Universal Bonding Ins. Co. v. Gittens and Sprinkle Enterprises, Inc.,* 960 F.2d 366, 372 (3d Cir., 1992), in which *Selby* was cited with approval in connection with the Court's holding that funds designated by New Jersey law as statutory trust funds held for the benefit of subcontractors and materialmen, once in the hands of the contractor, could not be avoided under § 547(b).

In *Hechinger,* defendant, M.G.H., contended that its property rights were protected by the Michigan statutes in question, and that the plaintiff, Hechinger, was required to "prove that it is a licensed residential building contractor that established an appropriate trust fund under Michigan law prior to being allowed to bring a cause of action." *Hechinger,* at 402, n. 4 (citations omitted). In this latter assertion, M.G.H. clearly went too far, and preemption of provisions of state law which would require pre-filing qualification under state law by plaintiffs seeking to avoid and recover transfers under § 547(b) was, in this Court's view, entirely proper. This Court, however, is directed to, and has found no other authority consistent with *Hechinger,* and does not agree that preemption of the entire statutory scheme, including the creation of a statutory trust for the benefit of subcontractors and materialmen, was either required or appropriate. In any event, the New York lien law is the statutory scheme before this Court at this time.

## VI. *Decision*

Previously, this Court has had occasion to address the applicability of the New York lien law, in virtually identical circumstances as those presented here, in two adversary proceedings in Debtors' bankruptcy case: Official Committee of Unsecured Creditors of The IT Group, Inc., *et al.,* On behalf of *The Estate of The IT Group, Inc., et al. v. Jointa Galusha, LLC,* Adv. Pro. 04–50321(PBL); and Official Committee of Unsecured Creditors of The IT Group, Inc., *et al.,* On behalf of *The Estate of The IT Group, Inc., et al., v. Waste Recovery Enterprises, LLC,* Adv. Pro. 04–51011(PBL).

In the earlier cases, this Court examined the provisions of the New York lien law, its legislative history, the status of proper-

ty rights subject to the statutory trust under § 541, and that provision's interaction with § 547(b). The Court also reviewed a number of judicial authorities, from New York state courts and bankruptcy courts. In a Memorandum Opinion dated June 7, 2005, this Court concluded that defendants were entitled to judgment in their favor because the New York lien law creates a statutory trust, which requires that the funds received by a general contractor for the improvement of real property be held in trust for the benefit of the subcontractors, and therefore, the funds were not property of Debtors' estate. Judgments were entered accordingly.[8] This Court hereby adopts and incorporates by reference its discussion and decision in the earlier adversary proceedings.

Defendants in the above-captioned adversary proceedings were subcontractors to certain prime contracts for the improvement of real property which occurred wholly within the State of New York. Defendants provided labor, services, and materials in connection with the prime contracts. This Court therefore, finds and concludes that Defendants in these proceedings are equally protected from avoidance of the transfers in question, that judgments should be entered in favor of Defendants and against Plaintiff, and that Plaintiff should take nothing by reason of its Complaints herein. Appropriate judgments follow.

### SUMMARY JUDGMENT

For the reasons set forth in the Memorandum Opinion of even date herewith, it is hereby Ordered that the Motion of Anderson Equipment Company for Summary Judgment is **GRANTED**. Defendant is entitled to judgment in its favor and against Plaintiff, and Plaintiff shall take nothing by reason of its complaint.

This adversary proceeding is hereby dismissed.

### SUMMARY JUDGMENT

For the reasons set forth in the Memorandum Opinion of even date herewith, it is hereby Ordered that the Motion of Stark's Gravel Company for Summary Judgment is **GRANTED**. Defendant is entitled to judgment in its favor and against Plaintiff, and Plaintiff shall take nothing by reason of its complaint.

This adversary proceeding is hereby dismissed.

---

8. It is noted that there was no mention of preemption by Plaintiff in either of the earlier cases.