**In re Jill Elisa CHAMBERS, Debtor.**

**Rosetta Stone Communications, LLC, Plaintiff,**

**v.**

**Neil C. Gordon, Chapter 7 Trustee for the Estate of Jill Elisa Chambers, Defendant.**

**Bankruptcy No. 10–90157–CRM.**

**Adversary No. 13–5063–CRM.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Oct. 10, 2013.

---

Robert F. Dallas, Casey Gilson, P.C., Atlanta, GA, for Plaintiff.

Neil C. Gordon, Arnall Golden Gregory LLP, Atlanta, GA, for Defendant.

## ORDER

C. RAY MULLINS, Bankruptcy Judge.

**THIS MATTER** is before the Court on the Chapter 7 Trustee's Motion to Dismiss (the "Motion"). Rosetta Stone Communications, LLC filed an adversary seeking a declaration that certain property of the estate can only be distributed to creditors that provided campaign services to the Debtor. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157. For the reasons stated below, the Court finds that dismissal is appropriate.

## I. FACTS

Jill Elisa Chambers (the "Debtor") is the former representative to the Georgia General Assembly for District 81. When

she filed her chapter 13 case, the Debtor was campaigning for re-election, using funds from a campaign account with Wachovia Bank. *In re Chambers,* 451 B.R. 621, 622 (Bankr.N.D.Ga.2011). The Debtor did not incorporate her campaign. *Id.* Rosetta Stone Communications LLC ("Rosetta Stone") provided pre-petition campaign services to the Debtor.[1]

During the chapter 13 case, the Court entered an order finding that the campaign funds held by the Debtor were part of her bankruptcy estate. *Chambers,* 451 B.R. 621. The Court considered the scope of section 541(a) of the Bankruptcy Code and found that the Debtor had a property interest in the campaign funds; therefore, per section 541(a), the campaign funds constituted property of the estate. The Court further found that "[a]lthough Georgia law restricts the use of the campaign funds, the anti-alienation provision [in section 541(c)(2) of the Bankruptcy Code] prevents state law from excluding the funds from becoming property of the estate." *Id.* at 624. The spendthrift trust exception to the anti-alienation provision does not apply because there is no evidence of a writing creating an express trust, let alone an express trust containing a valid spendthrift provision. *Id.* at 625. The Court concluded that while the Georgia campaign finance law restricts use, it does not determine ownership. *Id.* at 626. The opinion did "not reach the issue of whether certain creditors (e.g. campaign creditors) have priority claims with respect to campaign funds." *Id.* at 624. The Debtor thereafter converted her case to chapter 7. Neil Gordon was appointed as the Chapter 7 Trus-

tee and Rosetta Stone filed a proof of claim (claim no. 7), asserting an unsecured claim for $44,707.84.

Rosetta Stone filed this adversary proceeding, seeking a determination that the campaign funds held by the Chapter 7 Trustee (the "trustee") can only be distributed to campaign creditors. The trustee filed the Motion,[2] contending that the campaign funds became property of the estate and, absent a security interest in property of the estate, he is required to distribute estate assets pursuant to the priority order established in section 726 of the Bankruptcy Code. Rosetta Stone argues that by virtue of Georgia campaign finance laws, the campaign funds held by the trustee, while property of the estate, are subject to a constructive trust in favor of campaign creditors. The Court held a hearing on the Motion. After hearing argument from counsel, the Court took the matter under advisement. The Court must now determine whether Rosetta Stone has stated a plausible claim for relief. For the reasons stated below, the Court finds that dismissal is appropriate.

## II. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b), governs motions to dismiss. Pursuant to rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b); Fed. R. Bankr.P. 7012. The party moving for dis-

---

1. Rosetta Stone filed a proof of claim that indicates it provided various services to the Debtor such as making "robo calls," conducting a campaign poll, providing a fundraiser consultant and campaign worker, and producing a television advertisement. *See* Claim No. 7.

2. The trustee also filed a Motion for Sanctions Pursuant to Rule 9011 on April 18, 2013 (Doc. No. 9). Rosetta Stone filed a Response to the Motion for Sanctions (Doc. No. 12), and the trustee filed a Reply (Doc. No. 17).

missal has the burden of showing that no claim has been stated. 2–12 James Wm. Moore et al., *Moore's Fed. Practice* § 12.34 (3d ed. 1999).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id.* at 679, 129 S.Ct. 1937. The court must accept the plaintiff's factual allegations as true but conclusory allegations or legal conclusions are not entitled to the assumption of truth. *Id.*

## III. ANALYSIS

The Court has already determined that the campaign funds are property of the estate. Rosetta Stone has a general nonpriority unsecured claim—it does not have a security interest in the campaign funds. Further, Rosetta Stone has not alleged facts that warrant the finding of a constructive trust. The Court does not have the power to grant Rosetta Stone the relief it seeks.

### a. Distribution under the Code

 Commencement of a bankruptcy case creates an "estate." The estate becomes the temporary legal owner of all the debtor's property. It consists of all property in which the debtor has *any* interest as of the commencement of the case. 11 U.S.C. § 541(a); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Once the property is swept into the estate, it is subject to distribution according to the terms of section 726 of the Bankruptcy Code. *See Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946) ("In determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits.").

Section 726 details the distribution scheme for chapter 7 liquidation cases. The statutory language is plain and unambiguous. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)); *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Pursuant to section 726(a), there are six classes of claims; each class must be paid in full before the next lower class is paid anything. Section 726(a) provides for ordered distribution in the following manner: 1) priority claims; 2) unsecured claims that were either timely filed or tardily filed where creditor did not have proper notice of bankruptcy but was able to file in time to permit payment; 3) tardily filed unsecured claims where creditor did have proper notice but failed to file in time to permit payment; 4) claims for fines, penalties, and forfeitures relating to punitive damages; 5) claims for appropriate interest; and 6) any remaining assets to debtor. 11 U.S.C. § 726(a). Section 726(b) contains distribution rules when there is more than one claim within a particular class and provides that unsecured non-priority creditors filing timely claims generally have

equal priority and share pro rata in distribution. 11 U.S.C. § 726(b).

■■■ The statutory priority scheme is mandatory; Congress did not authorize the courts to exercise discretion and bankruptcy courts may not create priorities within classes. "Bankruptcy courts are not free to rearrange Congress' priorities for the treatment of creditors based on equitable grounds[.]" *In re Chewning & Frey Sec.,* 328 B.R. 899, 917 (Bankr. N.D.Ga.2005). Had Congress wanted the bankruptcy courts to fashion their own priorities for distribution of assets, it might have omitted sections 507 and 726 from the Bankruptcy Code. Instead, the Bankruptcy Code and its prior iterations contain an elaborate scheme of priorities. By clearly and specifically articulating priorities, Congress provided a mandate for proper distribution of estate funds, thereby preventing the exercise of discretion. *See Varsity Carpet Servs. v. Richardson (In re Colortex Indus.),* 19 F.3d 1371, 1383 (11th Cir.1994) (citing *Nathanson v. NLRB,* 344 U.S. 25, 29, 73 S.Ct. 80, 97 L.Ed. 23 (1952) (explaining that courts cannot prefer one creditor over another unless specifically directed to do so; "if one claimant is to be preferred over others, the purpose should be clear from the statute.")). Thus, "[t]he priority scheme set forth in the Bankruptcy Code must be applied regardless of the fault of the professionals or the equities of the situation." *In re Wilson–Seafresh, Inc.,* 263 B.R. 624, 632 (Bankr.N.D.Fla.2001).

Notwithstanding this clearly articulated distribution scheme, Rosetta Stone argues that the trustee should administer property of the estate according to a different distribution scheme. Rosetta Stone fails to provide any persuasive authority for this position. The campaign funds, as property of the estate, are subject to distribution pursuant to section 726. This Court is not free to rearrange Congress' priorities for the treatment of creditors based on equitable grounds. Moreover, requiring the trustee to administer a different distribution scheme would be difficult and time consuming. The Court will nevertheless consider whether Rosetta Stone has a security interest in the campaign funds, is entitled to priority status, or has alleged facts that if taken as true would support the finding of a constructive trust with respect to the campaign funds.

**b. Plaintiff does not have a security interest in the campaign funds**

■■ To determine whether a creditor holds a lien on property of the bankruptcy estate, and therefore the nature of the legal or equitable interest of the debtor, the bankruptcy court must look to non-bankruptcy law. *In re Chewning & Frey Sec.,* 328 B.R. 899, 921 (Bankr.N.D.Ga. 2005). In some cases, a "statutory lien" may arise pursuant to a statute on specified circumstances or conditions. 11 U.S.C. § 101(53). For example, Georgia law provides for the creation, priority, and enforcement of the attorney's lien under O.C.G.A. § 15–19–14. The attorney charging lien is an equitable interest in money or property awarded or recovered through the attorney's services. *See* O.C.G.A. § 15–19–14. Georgia law provides no such protection for campaign creditors.

■■ Pursuant to O.C.G.A. 21–5–1, et seq. (the "Ethics Act"), elected officials in Georgia must comply with the state's laws governing campaign finances. O.C.G.A. § 21–5–33 restricts a candidate's use of campaign funds and provides:

> Contributions to a candidate, a campaign committee, or a public officer holding elective office and any proceeds from investing such contributions shall be utilized only to defray ordinary and necessary expenses, which may include any loan of money from a candidate or public

officer holding elective office to the campaign committee of such candidate or such public officer, incurred in connection with such candidate's campaign for elective office or such public officer's fulfillment or retention of such office. O.C.G.A. § 21–5–33(a).[3] While the Ethics Act was meant to qualify or restrict the use of campaign funds, *Chambers,* 451 B.R. at 626, there is nothing in the statute that provides creditors providing campaign services with a lien or any other sort of security interest in the funds.[4] Georgia law provides that if a candidate violates the use provisions, he or she is guilty of a misdemeanor; the statute does not encumber the funds with a lien.[5] The Court finds that the Ethics Act does not provide Rosetta Stone a lien on the campaign funds.

### c. Plaintiff's claim is not entitled to priority status

■■■ Section 726 compels the trustee to distribute property of the estate according to the priorities of section 507. Section 507(a) of the Bankruptcy Code sets forth, in descending order, ten categories of expenses and claims that are entitled to priority payment in a bankruptcy case. 11 U.S.C. § 507(a). This priority schedule is designed to assure payment to certain classes of claims by requiring that they be paid before other claims are satisfied. *See In re Olga Coal Co.,* 194 B.R. 741, 745 (Bankr.S.D.N.Y.1996). However, the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among the creditors in the prescribed order of priority as Congress has legislated. *See Joint Indus. Bd. of Elec. Indus. v. United States,* 391 U.S. 224, 228, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968). Thus, provisions granting priority in bankruptcy are narrowly construed. *See Varsity Carpet Servs. v. Richardson (In re Colortex Indus.),* 19 F.3d 1371, 1377 (11th Cir.1994) (citing *Otte v. United States,* 419 U.S. 43, 53, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974)). Courts may not use equitable

---

**3.** The language is broad and it seems that campaign funds could be used to cover a large variety of expenses. Indeed, the statute provides that "ordinary and necessary expenses" shall include, but shall not be limited to:

> expenditures made during the reporting period for qualifying fees, office costs and rent, lodging, equipment, travel, advertising, postage, staff salaries, consultants, files storage, polling, special events, volunteers, reimbursements to volunteers, repayment of any loans received except as restricted under subsection (i) of Code Section 21–5–41, contributions to nonprofit organizations, flowers for special occasions, which shall include, but are not limited to, birthdays and funerals, attorney fees connected to and in the furtherance of the campaign, and all other expenditures contemplated in Code Section 21–5–33.

O.C.G.A. § 21–5–3(18). It seems that if the Debtor, an unincorporated individual, used her personal AT & T service to conduct campaign business, the service fee might consti-

tute an office cost. Similarly, if a candidate conducted campaign business out of his or her home office, it seems that the candidate's home mortgage payments might theoretically constitute an "ordinary and necessary expense."

**4.** Note too that the provision does not say anything about how funds should be distributed in the event that an individual running an unincorporated campaign files bankruptcy. Other Georgia statutes specify what happens in the event of insolvency. For example, O.C.G.A. § 10–7–50 discusses the effect of a surety's insolvency and several provisions of the commercial code discuss the effect of insolvency. *See e.g.,* O.C.G.A. §§ 11–2–502, 11–2–702.

**5.** O.C.G.A. § 21–5–9 discusses penalties for entities that violate the campaign finance provisions. It provides: "Except as otherwise provided in this chapter, any person who knowingly fails to comply with or who knowingly violates this chapter shall be guilty of a misdemeanor." O.C.G.A. § 21–5–9.

principles to alter the Bankruptcy Code's statutory priorities, and may not create or recognize other priorities. *See United States v. Noland,* 517 U.S. 535, 543, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) (citing *In re Columbia Ribbon Co.,* 117 F.2d 999, 1002 (3d Cir.1941) (court cannot "set up a subclassification of claims ... and fix an order of priority for the sub-classes according to its theory of equity")); *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.),* 536 F.2d 950, 953 (1st Cir. 1976) ("To give priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer."); *In re Bennett,* 237 B.R. 918, 923 (Bankr.N.D.Tex.1999) (only Congress can establish bankruptcy policy and bankruptcy courts cannot create new priorities); *cf., Andrus v. Glover Constr. Co.,* 446 U.S. 608, 616–617, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980) (citing *Cont'l Cas. Co. v. United States,* 314 U.S. 527, 533, 62 S.Ct. 393, 86 L.Ed. 426 (1942) (where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent)). Further, to the extent that a state statute purports to establish the priority of a claim over other claims, that statute is preempted by the Bankruptcy Code. *See* U.S. Const., art. VI, cl. 1, 2; *see also In re Lull*

*Corp.,* 162 B.R. 234, 240 (Bankr.D.Minn. 1993) (state statute providing priority to workers' compensation fund deemed invalid in bankruptcy); *In re Redford Roofing Co.,* 54 B.R. 254 (Bankr.N.D.Ill.1985) (the Bankruptcy Code takes precedence over conflicting statutes and priority of distribution in bankruptcy is governed exclusively by sections 507 and 726).

██ Rosetta Stone's proof of claim asserts a general unsecured claim for $44,707.84. At the hearing, counsel admitted that Rosetta Stone has a general unsecured claim. The Bankruptcy Code does not give any special consideration to creditors who provide campaign services. In the absence of an existing priority, the Court cannot use equitable principles to create an additional priority. Further, a state statute cannot reset bankruptcy priorities. Thus, even if Georgia law purports to establish the priority of Rosetta Stone's claim over others, that statute is preempted by the Bankruptcy Code.

### d. The campaign funds are not subject to a constructive trust

██ The party alleging that property is held in trust has the burden of proving the trust relationship. *Vacuum Corp.,* 215 B.R. at 281. Generally, the existence of a trust relationship turns on applicable nonbankruptcy law.[6] While the

---

6. Under Georgia law, trusts are either express or implied. An express trust must be created or declared in writing and must meet certain requirements. O.C.G.A. § 53–12–20. The Court has already determined that there is no evidence of a writing creating an express trust. *Chambers,* 451 B.R. at 625. Implied trusts are inferred by law from the nature of the transaction or the conduct of the parties and are either resulting or constructive. A resulting trust can arise under three circumstances: 1) when an express trust is created but fails for some reason; 2) when a trust is fully performed without exhausting all of the

trust property; and 3) when a purchase money resulting trust is established. *See* O.C.G.A. § 53–12–130. None of those circumstances are present here. The second type of implied trust, i.e., a constructive trust, is an equitable remedy that arises where it would be against equity for the holder of the property to retain it. Georgia law provides:

(a) A constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to the property, either from fraud or otherwise, cannot enjoy the beneficial interest in the

nature and extent of the debtor's interest are determined by state law, state law must be applied in a manner consistent with federal bankruptcy law. *Torres v. Eastlick (In re N. Am. Coin & Currency, Ltd.),* 767 F.2d 1573, 1575 (9th Cir.1985); *see also Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (property interests in a bankruptcy proceeding may not be determined by state law when federal law would require a different result); *McCafferty v. McCafferty (In re McCafferty),* 96 F.3d 192, 196 (6th Cir.1996) ("When such a conflict occurs, bankruptcy policy prevails"); *Taylor Assocs. v. Diamant (In re Diamant),* 178 B.R. 480, 489 (9th Cir. BAP 1995) ("it does not end the matter for a court to find that state law would impose a constructive trust over certain property; the constructive trust will not be given effect if it is against the federal bankruptcy policy").

■■■■ Claimants may seek the imposition of a constructive trust on assets of the bankruptcy estate so as to exclude those assets from the estate and require a turnover to the claimant.[7] "[T]he effect of a constructive trust in bankruptcy is to take the property out of the debtor's estate and to place the constructive trust claimant ahead of other creditors with respect to the trust *res." Cadle Co. v. Mangan (In re Flanagan),* 503 F.3d 171, 182 (2d Cir.2007). Accordingly, it is not the debtor who generally bears the burden of a constructive trust in bankruptcy, but the debtor's general creditors. *XL/Datacomp v. Wilson (In re Omegas Grp.),* 16 F.3d 1443, 1450 (6th Cir.1994). This type of privileging of one unsecured claim over another clearly thwarts the principle of ratable distribution underlying the Bankruptcy Code. *Id.; see also Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.),* 377 F.3d 209, 217–18 (2d Cir.2004) ("The constructive trust doctrine can wreak . . . havoc with the priority system ordained by the Bankruptcy Code."). As a consequence, bankruptcy courts are reluctant, absent a compelling reason, to impose a constructive trust on the property in the estate. *Flanagan,* 503 F.3d at 182; *see also Shields v. Duggan (In re Dartco, Inc.),* 197 B.R. 860, 869 (Bankr.D.Minn.1996) ("because the Debtor was and is in bankruptcy, a different sort of equity governs—and it is not inequitable to decline to recognize a constructive trust for the benefit of the transferee in the transactions"); *Neochem Corp. v. Behring Int'l, Inc. (In re Behring Int'l, Inc.),* 61 B.R. 896, 902 (Bankr. N.D.Tex.1986) ("Imposition of a constructive trust clearly thwarts the policy of ratable distribution and should not be impressed cavalierly."). Courts generally require the grounds for imposing a constructive trust "be so clear, convincing, strong and unequivocal as to lead to but one conclusion." *Wachovia Bank of Georgia, N.A. v. Vacuum Corp. (In re Vacuum Corp.),* 215 B.R. 277, 281–82 (Bankr. N.D.Ga.1997) (citations omitted).

■■ While the remedy of constructive trust is carefully circumscribed in bank-

---

property without violating some established principle of equity.
(b) The person claiming the beneficial interest in the property may be found to have waived the right to a constructive trust by subsequent ratification or long acquiescence.

O.C.G.A. § 53–12–132 (2010).

**7.** Claimants may also assert their positions "defensively," as defendants in avoidance ac-

tions, to establish that property transferred to them was held in trust by the debtor, and therefore not property of the debtor, and thus the transfer is not avoidable. Robert J. Keach, *The Continued Unsettled State of Constructive Trusts in Bankruptcy: Of Butner, Federal Interests & the Need for Uniformity,* 103 Com. L.J. 411, 411–12 (1998).

ruptcy cases, there are circumstances in which bankruptcy courts have been willing to enforce constructive trusts. Bankruptcy courts are much more likely to enforce a constructive trust that was created prepetition than they are to impose one after a case is filed. This is because, a constructive trust, unlike an express trust, is a remedy—it does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment "impressing" defendant's property or assets with a constructive trust. *See Omegas Grp.*, 16 F.3d at 1451. Thus, "[u]nless a court has already impressed a constructive trust upon certain assets or a legislature has created a specific statutory right to have particular kinds of funds held as if in trust, the claimant cannot properly represent to the bankruptcy court that he … [is] a beneficiary of a constructive trust held by the debtor." *Id.* at 1449; *see also Mullins v. Paul J. Paradise & Assocs., Inc. (In re Paul J. Paradise & Assocs.),* 217 B.R. 452, 456 (Bankr.D.Del.1997) (adopting the reasoning of *Omegas Grp.,* and calling it the majority view), *aff'd* 249 B.R. 360 (D.Del. 2000). A bankruptcy judge in this district has recognized constructive trusts created prepetition. In *In re Cotton,* Case No. 01-66915, 2004 WL 2983350, 2004 Bankr.LEXIS 440 (Bankr.N.D.Ga. Feb. 17, 2004), a state court had entered a judgment imposing a constructive trust on certain real properties. The trustee did not challenge the judgment or the fact that the objectors held equitable title to the property by virtue of the judgment. *Id.* at *1–2, 2004 Bankr.LEXIS 440 at *4. The court found that since the constructive trust existed prepetition, the real property subject to the constructive trust was not property of the estate. *Id.* at *4–5, 2004 Bankr.LEXIS 440 at *10. The court emphasized that it was basing its decision on the fact that there was a judicially recog-nized constructive trust in place prepetition.

Similarly, courts may recognize a constructive trust where a state statute declares property to be held in trust for particular purposes, such as builders trust funds created by statute to remedy specific problems in the construction industry. *See Omegas Grp.,* 16 F.3d at 1449 n. 6 (stating that the many states recognize such a right with regard to construction funds paid to contractors); *see also Selby v. Ford Motor Co.,* 590 F.2d 642, 648 (6th Cir.1979) (builders trust funds were subject to a constructive trust); *Official Comm. of Unsecured Creditors of the IT Grp., Inc. v. Anderson Equip. Co. (In re IT Grp., Inc.),* 332 B.R. 673 (Bankr.D.Del. 2005) (payments received by a subcontractor were subject to a statutory trust under New York law).

Use restrictions generally will not warrant the imposition of a constructive trust. For example, in *Bierbower v. McCarthy,* 334 B.R. 478 (D.D.C.2005), *appeal dismissed* 2006 WL 3086921, 2006 U.S.App. LEXIS 32525 (D.C.Cir. Oct. 17, 2006), a donor approved a $60,000 grant to the debtor with a letter that stated that the funds had to be used for certain charitable purposes. *Id.* at 479. When the debtor filed chapter 7, the donor requested the return of funds for distribution to another charitable organization. *Id.* at 480. The bankruptcy court determined that the donor did not retain an ownership interest in the funds; they were an asset of the bankruptcy estate and had to be utilized for the payment of debts. *Id.* The court also declined to impose a constructive trust. *Id.* The court found that while the restrictive language in the grant limited the funds to charitable use, there was no express provision for their return in the

event of dissolution or liquidation.[8] On appeal, the district court found that the bankruptcy court was correct in refusing to impose a constructive trust; the court did not abuse its discretion in finding that there was insufficient evidence of fraud to warrant the imposition of a constructive trust. *Id.* at 482.

Some courts have found that a constructive trust is appropriate when there are serious allegations of fraud. For example, in *N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons)*, 772 F.2d 462 (8th Cir.1985), the debtor fraudulently acquired a bank loan by falsifying title documents.[9] When the debtor filed chapter 11, it requested that an escrow agent turn over the funds to the debtor. *Id.* at 465. The bankruptcy court held that the entire escrow fund was property of the estate and was affirmed by the district court. On appeal, the Eighth Circuit Court of Appeals agreed that the entire fund was technically property of the estate but found that it would be unfair for the debtor to enjoy an interest in the escrow fund; the court imposed a constructive trust on the escrow

fund. *Id.* at 467. Had the debtor not been guilty of fraudulent conduct, the entire fund would have been property of the estate.[10]

Other courts, however, have held that constructive trusts are not appropriate in bankruptcy even where the debtor commits fraud. For example, in *Day Care–Sam Furr, LLC v. Ross (In re Ross)*, 478 B.R. 715, 731 (Bankr.W.D.N.C.2012), the debtor encouraged plaintiffs to obtain a line of credit and then drew down the line of credit and used $220,000 of the proceeds to pay a personal debt. *Id.* at 725. The bankruptcy court found that by misappropriating and retaining plaintiffs' funds, the debtor unjustly enriched himself to plaintiffs' detriment and committed both actual and constructive fraud. *Id.* at 730. Nevertheless, the court did not impress a constructive trust on the property the debtor acquired using plaintiffs' money. *Id.* at 731. The court explained that the remedy of a constructive trust is generally untenable in bankruptcy, especially where the debtor is in a no asset chapter 7 bankruptcy case and owes a considerable number of creditors. *Id.*[11]

8. The court also looked to the District of Columbia code relating to the dissolution and liquidation of nonprofit corporations.

9. The debtor wished to obtain a loan from a bank on real estate that was encumbered by a first mortgage. The bank was precluded by law from making a loan on real estate unless it received a first mortgage on the property. To circumvent this obstacle, the debtor obtained a written commitment from a title company for title insurance on the real property. The debtor executed an escrow agreement with the title company whereby the title company controlled a fund in escrow for the purpose of making payments to the first mortgagee. The title company then issued a title policy to the bank that did not reflect the first mortgage on the debtor's property.

10. The court remanded the case to direct the debtors to satisfy the original mortgage, not-

ing that remaining funds were property of the estate subject to disposition according to the Code.

11. Where a creditor claims that a debtor defrauded him, the Code provides an alternate remedy that may be more appropriate—pursuant to section 523, debts obtained by false pretenses, false representations, or actual fraud (523(a)(2)(A)); debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny (523(a)(4)); and debts for willful and malicious injury by the debtor to another entity or to the property of another entity (523(a)(6)), are specifically excepted from discharge. *See Omegas Grp.*, 16 F.3d at 1451–52. Indeed, the bankruptcy court in *Ross* found that the debtor's misuse of proceeds from a line of credit constituted willful conversion and fraud and that the obligation was non-dischargeable pursuant to sections 523(a)(2), (a)(4) and (a)(6).

■ While there are certain circumstances in which a bankruptcy court may recognize a constructive trust, none of those circumstances are present here. There is no prior judgment impressing a constructive trust on the campaign funds and no applicable state statute creating a trust fund. While the Ethics Act includes restrictive language, it contains no express provision for the return of campaign funds in the event of dissolution or liquidation. Rosetta Stone has not alleged that Defendant acted fraudulently. Even if it had, the Debtor is in a chapter 7 bankruptcy case. She owes a considerable number of creditors. Allowing Rosetta Stone to receive full payment on its claims while other creditors go hungry would run afoul of the policies of the Bankruptcy Code. The Court therefore finds that Plaintiff has not alleged circumstances that warrant the imposition of a constructive trust.

### e. Section 105 does not empower the Court to override section 726

■ Finally, Rosetta Stone urges the Court to use its equitable powers under section 105 to rule that the campaign funds may only be distributed to certain creditors. Section 105(a) provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The equitable power granted to the bankruptcy courts under section 105 is not unlimited. *Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co.)*, 963 F.2d 1490, 1494 (11th Cir.1992). Section 105 "may not be exercised in a manner that is inconsistent with the other, more specific provisions of the Code." *Landsing Diversified Props.–II v. First Nat'l Bank & Trust Co. of Tulsa (In re W.*

*Real Estate Fund, Inc.)*, 922 F.2d 592, 601 (10th Cir.1990). Section 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law[.]" *Howell v. Bank of Newnan (In re Summit Fin. Servs.)*, 240 B.R. 105, 122 (Bankr.N.D.Ga. 1999); *see also Norwest Bank of Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (equitable powers of the bankruptcy court "must and can only be exercised within the confines of the Bankruptcy Code."). Simply put, section 105 does not constitute a roving commission to do equity. *Howell*, 240 B.R. at 122 (citations omitted); *see also Jamo v. Katahdin Fed. Credit Union (In re Jamo)*, 283 F.3d 392, 403 (1st Cir.2002) ("section 105(a) does not provide bankruptcy courts with a roving writ, much less a free hand."); *cf. United States v. Noland*, 517 U.S. 535, 540–41, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) (decisions "about the treatment of categories of claims in bankruptcy proceedings ... are not dictated or illuminated by principles of equity and do not fall within the judicial power of equitable subordination. . . .") (citations omitted).

■ Rosetta Stone contends that distributing the campaign funds to creditors in accordance with section 726 thwarts Georgia state policies.[12] While the Court understands that the Ethics Act promotes important policies, section 105 does not empower courts to override explicit provisions of the Bankruptcy Code. "Just because something is so under state law does not necessarily make it so under the Bankruptcy Code." *XL/Datacomp v. Wilson (In re Omegas Grp.)*, 16 F.3d 1443, 1450 (6th Cir.1994). State policies often have to give

---

12. Plaintiff also states that allowing campaign funds to be used for non-campaign purposes incentivizes financially challenged elected officials to raise funds under the cover of election law knowing the funds will be used in bankruptcy for purposes otherwise prohibited outside of bankruptcy. However, the implications are probably limited.

way to other policies in bankruptcy court because "the equities of bankruptcy are not the equities of the common law." *Id.*[13] The Court cannot use section 105 to alter the clearly articulated distribution scheme of section 726.

Further, the Court finds that giving Rosetta Stone's claim special treatment would be inequitable since Rosetta Stone waited a year and a half after filing its general unsecured proof of claim, and nearly two and a half years after Debtor filed bankruptcy, to file its complaint. Section 501 of the Bankruptcy Code provides that a "creditor ... may file a proof of claim." 11 U.S.C. § 501. "Claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101(5). Pursuant to section 502(a) of the Bankruptcy Code, "a claim or interest, proof of which is filed under section 501 ..., is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Section 704(a)(5) requires that the trustee shall, "if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper[.]" 11 U.S.C. § 704(a)(5). The trustee should not object to a claim unless there is a reasonable basis for the court to disallow the claim.

Rosetta Stone filed its proof of claim on September 1, 2011. The trustee has a duty to review all proofs of claim to determine if there is a reasonable basis to move to disallow a particular claim. The trustee did not object to Rosetta Stone's claim and, therefore, the claim is deemed allowed pursuant to section 502(a). On November 20, 2012, the trustee filed a report of assets, stating that there were funds available for distribution to creditors and requesting the Clerk to set a claims bar date. The Clerk entered a notice directing creditors to file non-government proof of claims by February 24, 2013. Once Rosetta Stone learned that there were funds available for distribution to creditors, it filed this complaint.

While Rosetta Stone admits that it has an unsecured claim, it nevertheless asks the Court to give its claim special treatment. An attempt to change the nature of a claim from unsecured to a different status, such as a priority status, is really the assertion of a new claim. *See Highlands Ins. Co. v. Alliance Operating Corp. (In re Alliance Operating Corp.)*, 60 F.3d 1174, 1175 (5th Cir.1995). That is because the nature of a priority claim is much different from that of a general unsecured claim and reclassifying a claim impacts the distributions to other creditors. *See id.* Rosetta Stone does not suggest that any event occurred that would cause it to reclassify its claim. If Rosetta Stone's claim deserved special treatment, it deserved it at the time the proof of claim was filed. Rosetta Stone has had ample opportunity to litigate the status of its claim but is now attempting to test the status of its claim in a different procedural guise.[14] Rosetta

---

**13.** For example, state garnishment statutes must give way to the Bankruptcy Code.

**14.** Since Rosetta Stone has had ample opportunity to litigate the status of its claim and choose not to, principles of *res judicata* suggest that Rosetta Stone should not get another bite at the apple to characterize its claim. While the Court did not enter an order on Rosetta Stone's claim, some courts have

found that claim allowance has *res judicata* effects even if there is no specific ruling by the bankruptcy court on the claim. *See Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 530 (9th Cir.1998). In other words, once a claim has been allowed, any attacks that could have been asserted against its allowance cannot be raised in later proceedings between the same parties. *Id.; but see Cnty. Fuel Co., Inc. v. Equitable Bank Corp.*, 832

Stone should not be permitted, at this late date, to assert what is essentially a new claim seeking priority treatment. This is particularly true since this is a chapter 7 liquidation case in which matters should be resolved as expeditiously and economically as possible. *See EDP Med. Computer Sys. v. United States,* 480 F.3d 621, 625 (2d Cir.2007). Filing the complaint at this late point merely frustrates the trustee's administration of the estate.

## IV. CONCLUSION

After careful consideration of this matter, the Court concludes that the complaint should be dismissed. The subject funds are property of the estate and the trustee is required to distribute assets pursuant to section 726. The Bankruptcy Code promotes equality of distribution and the Court cannot prefer one creditor over another unless specifically directed to do so. The Court finds nothing in the Bankruptcy Code or Georgia law to warrant treating Rosetta Stone differently than other similarly situated creditors. Accordingly,

**IT IS HEREBY ORDERED** that the Motion be and is hereby **GRANTED.**

F.2d 290, 292 (4th Cir.1987) ("[It] is doubtful that the 'automatic allowance' under 11 U.S.C. § 502(a) of a claim not objected to constitutes a 'final judgment' of the type that gives rise to 'bar' or 'claim preclusion' "); *Fisher v. Santry (In re Santry),* 481 B.R. 824, 829–30 (Bankr.N.D.Ga.2012) (declining to follow *Siegel* ).